LARRY BOWDEN, Petitioner, v. SUSSEX STUDEBAKER, INC., Defendant.

(*February* 2, 1960.)

STIFTEL, J., sitting.

*Howard T. Ennis* (of McNeilly and Ennis) for Petitioner.

*Paul R. Reed* (of Tunnell and Raysor) for defendant.

Superior Court for Sussex County, Rule No. 3, Sept. T., 1958.

STIFTEL, J.:

On December 23, 1957, Larry Bowden, the petitioner, purchased a used 1950 Buick 4-door sedan from the defendant, Sussex Studebaker, Inc. (Sussex), for the sum of $328.42. Bowden paid Sussex $100 cash and signed a judgment note for the balance, and at the same time executed a conditional sales contract with Sussex. The balance of $228.42, which included financing and insurance charges, was to be paid in six monthly installments of $38.07 each. As a consequence of Bowden's failure to pay any installment, the defendant repossessed the 1950 Buick on March 11, 1958.

Sussex then proceeded to sell the Buick pursuant to 6 *Del. Code Ann.* § 920. It posted notices at three local public places on March 27 or March 28, 1958; and a notice of the contemplated sale was sent to Bowden by registered mail on March 27, 1958. A receipt, signed by the petitioner on March 28, 1958, was received by Sussex before the resale. The resale itself took place on April 8, 1958.

On April 18, 1958, the note was entered as a judgment in the Prothonotary's office in Georgetown, Delaware, and execution was issued thereon for the balance of $228.42. Bowden then petitioned this court to vacate its judgment and execution on the judgment was stayed. Sussex moved for summary judgment, claiming that the Buick was repossessed and sold according to the provisions of the Conditional Sales Act. On the other hand, Bowden argues as follows:

(1) That Sussex failed to comply with 6 *Del. C. Ann.* § 917 in that it failed to serve upon Bowden personally or by registered mail a notice of intention to retake on account of Bowden's default not more than 40 nor less than 20 days prior to the retaking of the Buick by Sussex;

(2) That in any event the sale conducted by Sussex wherein Sussex purchased the car at its own sale was inequitable for the following reasons:

(a) The posting of the public notices was improper in that one notice of sale was improperly posted as Sussex's place of business;

(b) That Sussex acted improperly in bidding at its own sale for the Buick automobile;

(c) That the highest bid offered by Sussex at its own sale was grossly inadequate and unconscionable.

This court is called upon to answer the following questions:

1. Was Sussex required to give Bowden a "notice of intention to retake" the automobile as provided in 6 *Del. C.* § 917?[1]

2. Was the procedure for the public sale of the Buick proper and furthermore was the sale properly conducted?

▮ Bowden's principal argument centers on Sussex's failure to comply with the provisions of 6 *Del. C.* § 917, which provides, *inter alia,* for "a notice of intention to retake" goods on account of the buyer's default. The record is clear, however, that Sussex did not follow the procedure outlined in 6 *Del. C.* § 917, but instead used the provisions of 6 *Del. C.* § 918.[2] Section 918 does not require a "notice to retake". It specifically provides that in the event the seller fails to give a notice of intention to retake, as required in § 917, that he shall retain the goods for 10 days after retaking, during which period the buyer is given certain rights of redemption, as specified in the section. The seller has the option to use either Section 917 or Section 918. Section 917 provides a period in advance of retaking during which the buyer is warned of the likelihood of loss of goods and advised to make a renewed effort to perform. Section 918 gives the buyer a similar period after the retaking. The objects of both sections are the same. Where 918 is used there is no need to use 917, *Vol.* 2A *U. L. A., Commentaries on Conditional Sales,* §§ 113, 114. In this

---

[1] § 917 reads as follows:

"Notice of intention to retake

"Not more than 40 nor less than 20 days prior to the retaking, the seller, if he so desires, may serve upon the buyer personally or by registered mail a notice of intention to retake the goods on account of the buyer's default. The notice shall state the default and the period at the end of which the goods will be retaken, and shall briefly and clearly state what the buyer's rights under this chapter will be in case they are retaken. If the notice is so served and the buyer does not perform the obligations in which he has made default before the day set for retaking, the seller may retake the goods upon paying any rent or storage due thereon, and hold them subject to the provisions of sections 919-923 of this title regarding resale, but without any right of redemption."

case, Sussex properly complied with the provisions of Section 918.

I now consider the resale procedure used by Sussex.

Section 920 does not require the seller to resell the automobile if the buyer has paid less than 50% of the purchase price, unless the buyer demands it. However, the seller may voluntarily resell the goods for the account of the buyer on compliance with the applicable requirements of Section 919.[3] *H. L. Braham & Co. v. Zittel,* 232 *App. Div.* 406, 250 N. Y. S. 44, 47. The purpose of the voluntary resale is to give the seller the right to hold the buyer to the obligation for any deficiency. *Ellner v. Commercial Credit Corporation,* 137 *Misc.* 251, 242 *N. Y. S.* 720, 721.

Section 921 governs the application of the proceeds of the resale, and section 922 provides that where the proceeds have not been sufficient to meet the balance of the purchase price, "the seller may recover the deficiency from the

---

[2]§ 918 reads as follows:

"Redemption

"If the seller does not give the notice of intention to retake described in section 917 of this title, he shall retain the goods for ten days after retaking within the state in which they were located when retaken, during which period the buyer, upon payment or tender of the amount due under the contract at the time of retaking and interest, or upon performance or tender of performance of such other condition as may be named in the contract as precedent to the passage of the property in the goods, or upon performance or tender of performance of any other promise for the breach of which the goods were retaken, and upon payment of the expenses of retaking, keeping and storage, may redeem the goods and become entitled to take possession of them and to continue in the performance of the contract as if no default had occurred. Upon written demand delivered personally or by registered mail by the buyer, the seller shall furnish to the buyer a written statement of the sum due under the contract and the expense of retaking, keeping and storage. For failure to furnish such statement within a reasonable time after demand, the seller shall forfeit to the buyer $10 and also be liable to him for all damages suffered because of such failure. If the goods are perishable so that retention for ten days as herein prescribed would result in their destruction or substantial injury, the provisions of this section shall not apply, and the seller may resell the goods immediately upon their retaking. The provision of this section requiring the retention of the goods within the state during the period allowed for redemption shall not apply to the goods described in section 908 of this title."

buyer * * *". Section 924 restricts the liability of the buyer to the deficiency as shown after the resale. *Continental Guaranty Corporation v. People's Bus Line*, 31 *Del.* 595, 117 *A.* 275, 278.

In order to hold Bowden for the deficiency, it was necessary for Sussex to comply with the resale requirements of Section 919 that pertain to property where less than $500 has been paid. Section 919 requires, *inter alia*, notice of the sale by three notices posted in different public places within the filing district where the goods are to be sold, at least five days before the sale. There are three affidavits filed pertaining to the posting. One affidavit shows a posting at the place of business of Sussex; another affidavit shows a posting at the office of Citizens' Acceptance Corporation. The third affidavit, signed by "Ray W. Lynch", states that he trades under the style of Ray's Paint & Body Shop, Georgetown, Delaware. The affidavit then states: "That on March 28, 1958, written notice was posted in a prominent place of public auction of a certain 1950 Buick, four door Sedan, Serial Number 3558619, to be held at Georgetown, on April 8, 1958."

---

[3]§ 919 reads as follows:

"Compulsory resale by seller

"If the buyer does not redeem the goods within ten days after the seller has retaken possession, and the buyer has paid at least 50 per cent of the purchase price at the time of the retaking, the seller shall sell them at public auction in the state where they were at the time of the retaking, such sale to be held not more than 30 days after the retaking. The seller shall give to the buyer not less than ten days' written notice of the sale, either personally or by registered mail, directed to the buyer at his last known place of business or residence. The seller shall also give notice of the sale by at least three notices posted in different public places within the filing district where the goods are to be sold, at least five days before the sale. If at the time of the retaking $500 or more has been paid on the purchase price, the seller shall also give notice of the sale at least five days before the sale by publication in a newspaper published or having a general circulation within the filing district where the goods are to be sold. The seller may bid for the goods at the resale. If the goods are of the kind described in section 908 of this title, the parties may fix in the conditional sale contract the place where the goods shall be resold."

Although it is unknown from the Raymond W. Lynch affidavit whether or not the posting of the notice by Raymond W. Lynch was either in a public place or in the filing district, for the reason that the affidavit itself fails to state where the notice was posted, Bowden, nevertheless, cures this possible defect by admitting in his brief that the notice was posted in the auto repair shop.

■ In his petition, Bowden states that the notices were not posted in a public place, as is required by statute. 35 *Words & Phrases, public places, p. 258, etc.,* and *Pocket Part; Annotation: Conditional Sale—Resale,* 49 *A. L. R.* 2d 15, 37—41 *(place of posting).* Sussex produced three affidavits where the affiants allege that the notices were posted in a public place. Bowden supplied no counter-affidavits which took issue with this fact. Petitioner had the obligation to come forward on defendant's motion for summary judgment and demonstrate an issue of fact on the question of public place. This, he failed to do.

Bowden next argues that there is an issue of fact on the question of the fairness of the sale conducted by Sussex on April 8, 1958. There is no evidence supplied regarding any irregularity in the sale procedure. The sole complaint of Bowden is that the price obtained at the resale was grossly inadequate.

■ As I have stated earlier, Section 920 allows the seller to resell for the account of the buyer. Section 919 permits the seller to bid for the goods at resale. Consequently, the seller may purchase at the sale..

■ The facts reveal that the only person that bid at the public sale at the business place of Sussex was the agent of Sussex. Sussex, consequently, became the purchaser of the Buick on April 8, 1958 at its resale price of $25. Four months prior to this resale, on December 23, 1957, Sussex had sold this same Buick to Bowden for $328.42. At this time, Bowden

paid $100 down and also paid $11.82 at a later date as a part-payment on a monthly installment. On the deficiency judgment, Sussex has executed against Bowden for $228.42, which is more than the amount due and unpaid by Bowden. Apparently Sussex did not credit the $11.82 which was paid as part of a monthly installment; nor is it clear whether Sussex credited the $15 to Bowden on the original purchase price after sale wherein the expenses were $10.

Bowden's contention that the resale price was grossly inadequate has no evidentiary support except the bare facts of difference in price obtained by Sussex at the time of sale on December 23, 1957 to Bowden and the price obtained at the resale to itself on April 8, 1958. Bowden has not established in the record that the car was in the same condition or approximately the same condition that it had been when he purchased the vehicle. There is no evidence in the record upon which to base a finding of the market value at the time of resale. Sussex established a *prima facie* case by showing that it had complied with the requirements of sale set down in Section 919. Bowden had the burden of coming forward and showing in the record that the price obtained was grossly inadequate. The mere fact that $25 was the price paid at the resale is not sufficient evidence, in and of itself, of a grossly inadequate price, absent other circumstances. *Millick v. Peer*, 130 *Cal. App.* 2d *Supp.* 894, 279 *P.* 2d 212, 214. While it has been recognized in some jurisdictions that a conditional vendor is required to deal fairly so as to secure the best price possible in order to protect the buyer's equity in the property when he sells repossessed property for the conditional purchaser's account, Annotation: Conditional Sale—Resale, 49 *A. L. R.* 2d 17, 57-60 (*price obtained*), nevertheless, it is the obligation of the buyer to come forward with evidence on defendant's motion for summary judgment which would justify this court in considering the invalidating of the sale for unfair dealing by the seller.

■ However, I can not decide from the record that Sussex is entitled to the deficiency of $228.42, which it now claims to be due to it on execution. Sussex has not satisfactorily demonstrated its reason for not crediting to Bowden's account $11.82 paid by him as a part-installment, nor has it explained its reason for failing to credit him with the $15 net it obtained at the resale on April 8, 1958. It is, therefore, required that I deny Sussex's motion for summary judgment for the amount of deficiency of $228.42, and I order a hearing to determine the failure of Sussex to properly allow the credits described to the account of the buyer.