ASSOCIATES FINANCIAL SERVICES COMPANY, INC., Plaintiff,

v.

**William A. DiMARCO, Defendant.**

Superior Court of Delaware, New Castle County.

Submitted Dec. 13, 1977.

Decided Feb. 2, 1978.

Robert B. Coonin, of Knecht, Greenstein & Berkowitz, Wilmington, for plaintiff.

David C. McBride, of Bayard, Brill & Handelman, Wilmington, for defendant.

TAYLOR, Judge.

Plaintiff seeks to recover deficiency judgments against the defendant for the unpaid balance due under two conditional sales contracts.

## I

Defendant purchased one truck in October, 1973 at a purchase price of $16,004.72 and a second truck in October, 1974 for a purchase price of $55,000.

On March 26, 1975, the defendant returned both trucks to Diamond Sales, Inc. because he was unable to make the payments on the trucks.

After defendant returned the trucks, plaintiff sent notices that the trucks would be sold at a private sale after a time specified in May, 1975. Each truck was sold at the time specified in the notice. However, contrary to the notices, the trucks were sold at public sale instead of private sale as noticed. In both instances the plaintiff was the only bidder and it purchased both trucks at an amount equal to its expenses.

More than 9 months later, the plaintiff sold the trucks at private sale. The truck originally purchased for $16,000 was sold on February 20, 1976 for $1,000. The truck costing $55,000 was sold on May 18, 1976 for $23,000. It appears that these are the sums that plaintiff has applied against the unpaid balance of the debt in fixing the amount now claimed in these suits.

The defendant now cites three reasons in support of his position that deficiency judgment is barred:

(1) that the notices for the May, 1975 sales which were held as public sales did not meet the statutory requirements;

(2) that if the May, 1975 sales are ignored, the sales held in 1976 after the private sales notices were not "reasonable" within the requirement of 6 Del.C. § 9–504(3); and

(3) that holding the trucks for about a year amounted to an accord and satisfaction.

The parties are in agreement that the applicable section of the Delaware Uniform Commercial Code is 6 Del.C. § 9–504(3). This section states in pertinent part:

"(3) Disposition of the collateral may be by public or private proceeding and may be made by way of one or more contracts. Sale or other disposition may be as a unit

or in parcels and at any time and place and on any terms but every aspect of the disposition including the method, manner, time, place and terms must be commercially reasonable. Unless collateral is perishable or threatens to decline speedily in value or is of a type customarily sold on a recognized market, *reasonable notification of the time and place of any public sale* or reasonable notification of the time after which any private sale or other intended disposition is to be made shall be sent by the secured party to the debtor . . . ." [emphasis added].

## II. MAY, 1975 SALES

The notices which preceded the May, 1975 sales were in the following form:

"You are hereby notified that the following described property retaken from you will be offered for private sale by the undersigned after 5 o'clock p. m. on the [. . .] day of May, 1975 and from day to day thereafter until sold."

The sales which took place at the times specified in those notices were public sales.

▇▇▇ According to 6 Del.C. § 9–504(3), the notice for public sale must specify the time and place of the sale. Cf. White and Summers, *Handbook of the Law Under the Uniform Commercial Code* 986 (1972); 64 *Nw.U.L.Rev.* 808 (1970). Here the notices specified no place of sale and stated the items would be offered for sale "after 5 o'clock p. m. on the [. . .] day of May, 1975 and from day to day thereafter until sold." This failed to specify a time of sale. Finally, the notice specifically referred to private sale. This of necessity had the effect of eliminating the possibility of bidding by defendant or any bidders whom he might have produced. Clearly, an important function of a public sale notice is to afford the debtor the opportunity to be present and bid at the sale and also to encourage others to be present and bid. 4 Anderson, *Uniform Commercial Code*, p. 618 § 9–504:18. By giving notice of private sale, plaintiff deprived defendant of that opportunity. Plaintiff could not give notice

of private sale as a preliminary step culminating in a public sale.

There is a further consideration which may bar plaintiff from relying upon its notice of private sale to support the sale to itself. 6 Del.C. § 9–504(3) provides:

"The secured party may buy at any public sale and if the collateral is of a type customarily sold in a recognized market or is of a type which is the subject of widely distributed standard price quotations he may buy at private sale."

The Delaware Study Comment (3) dealing with Procedure for Foreclosure Sales states:

"Section 9–504(3) permits a public or private sale and allows the secured party to buy at any public sale. However, he may buy at a private sale only if the collateral is of a type customarily sold at a recognized market or is of the type which is the subject of widely distributed standard price quotations."

White and Summers, *Handbook of the Law Under the Uniform Commercial Code* 992 (1972) states:

"Although 9–504 authorizes resale of collateral by either public or private sale, the Code only hints at the distinction between the two methods. Nevertheless, it is important to know the difference because the method chosen determines the form of notice the secured party must give the debtor and may also affect the rights of the purchaser. Moreover, the secured party may purchase the collateral at a public resale, but he is permitted to purchase at a private resale only when the collateral is 'customarily sold on a recognized market' or the subject of widespread price quotations. Thus, purchase by the secured party at a private sale may be a violation of Part Five of Article Nine."

▇▇▇ Whether a truck is customarily sold on a recognized market or is subject to market or price quotations such as to qualify under § 9–504(3) to permit purchase at private sale by the creditor has not been

addressed factually by either party.[1] It cannot be disposed of on summary judgment.

### III. 1976 SALES

Plaintiff asserts that even if the May, 1975 public sales must fall because of lack of proper notice the private sales which it made in 1976 were validly made because of the private sale notices which it gave to defendant in April, 1975. In form the notices met the requirements for private sale.

■ Defendant contends that by undertaking the May, 1975 sales plaintiff exhausted its power of sale and could not thereafter pursue a different course. If the power of sale had been validly exercised, there could be little dispute with that position. However, as noted above, the sale was not valid. Nor does it appear that any estoppel arose because of reliance on the purported sale by the debtor or by any third party. Nor does the record indicate that the debtor was aware that the sales as noticed in 1975 had not occurred. Defendant has cited no authority for the proposition that a creditor may not effect a valid sale after having undertaken an invalid sale. Absent equitable considerations supporting a contrary result, I do not find that the 1975 invalid sales in which the creditor undertook to purchase the collateral barred subsequent sales, if the creditor did not treat the collateral as its own.

Defendant contends that plaintiff cannot rely on the April, 1975 notices because they were given over a year before the private sales and, hence, were not reasonable notice within the meaning of 6 Del.C. § 9–504(3) because of the time lapse between notice and sale.

■ The portion of 6 Del.C. § 9–504(3) which deals with notice of private sale requires "reasonable notification of the time after which any private sale or other intended disposition is to be made." General-

ly, cases dealing with the reasonableness of notification have dealt with whether the notification afforded the debtor a sufficiently long period before the specified earliest private sale date. White and Summers, *Handbook of the Law Under the Uniform Commercial Code* 986–7, § 26–10. Here, the question is whether the lapse of time between specified earliest sale date and the actual sale date was too long. The objective of notice where a private sale is contemplated is to afford a reasonable time within which the debtor can protect his property by paying off the debt or by finding a buyer for the property. 4 Anderson, *Uniform Commercial Code,* p. 618, § 9–504:18. Assuming that the time afforded this debtor between notice and the specified earliest sale date was reasonable, and assuming that the secured creditor took no action which came to the debtor's attention indicating rescission of the prior private sale notice I do not find that the mere delay in effecting the private sale ·after giving notice violated the notice requirements of the statute, provided the test of commercial reasonableness can be met.

■ The standard which the creditor must meet is that his actions must be commercially reasonable. 6 *Del.C.* § 9–504(1) & (3). Every aspect of the disposition "including the method, manner, time, place and terms" must meet that standard. Ibid. The commercial reasonableness of the creditor's actions must include consideration of delay in proceeding with sale after coming into possession of the collateral and after giving notice of private sale. 4 Anderson, *Uniform Commercial Code,* p. 605, § 9–504:1. To be commercially reasonable the actions must be "in keeping with prevailing trade practices among reputable and responsible business and commercial enterprises engaged in the same or a similar business." Ibid, p. 613, § 9–504:10.

■ It is recognized that the conduct of the creditor with respect to the collateral

1. *O'Neil v. Mack Trucks, Inc.,* Tex.Civ.App., 533 S.W.2d 832 (1975) found that the requirement was not met to permit sale of a truck, and *Carter v. Ryburn Food Sales, Inc.,* Ark. Supr.,

248 Ark. 236, 451 S.W.2d 199 (1970) found a similar insufficiency with respect to sale of a used automobile.

may be such as to amount to an accord and satisfaction. White and Summers, *Handbook of the Law Under the Uniform Commercial Code,* supra, p. 980; *Farmers State Bank of Parkston v. Otten,* S.D.Supr., 87 S.D. 161, 204 N.W.2d 178 (1973); *Bradford v. Lindsey Chevrolet Company,* Ga.App., 117 Ga.App. 781, 161 S.E.2d 904 (1968); *Commercial Credit Equipment Corp. v. Kelland,* Ariz.Supr., 101 Ariz. 477, 421 P.2d 325 (1966). The facts other than two purported sales of the collateral have not been developed sufficiently to bring this case within that principle.

It is noted also that the creditor did not pursue 6 Del.C. (1974) § 9–505(2) which is designed to result in satisfaction of the debt in exchange for the creditor's retention of the collateral. Compare *Cerasoli v. Schneider,* Del.Super., 311 A.2d 880 (1973). This Court held in *Shultz v. Delaware Trust Company,* Del.Super., 360 A.2d 576 (1976) that the question of whether retention of the collateral for more than 5 years constituted satisfaction of the debt without complying with the statute in that respect was a fact issue which should not be resolved on summary judgment.

## IV. DEFICIENCY JUDGMENT

Having determined that the case is not in the posture to resolve the question of whether the 1976 sales satisfied the statutory requirements, it is appropriate to consider the question of whether deficiency judgment is permissible if the sale is found not to satisfy the statute. 6 Del.C. § 9–504(2) permits the creditor to sell the secured goods and look to the debtor for any deficiency. This does not answer the question whether the creditor is entitled to deficiency judgment despite his disposition of the security without complying with the statutory requirements. There is no specific section of the Code that requires the barring of a deficiency judgment as a penalty for failure to comply with the notice provisions.

The Delaware Courts have not resolved this question under the Uniform Commercial Code.

The predecessor statute was the Uniform Conditional Sales Act. 6 Del.C. (1953) Ch. 9. Under that statute, this Court on three occasions considered the relative effect of that section and the section which authorized deficiency judgment, 6 Del.C. (1953) § 922, and concluded in each case that deficiency judgment was not proper where the secured creditor had sold the collateral without complying with statutory requirements. *Commercial Credit Corp. v. Swiderski,* Del.Super., 195 A.2d 546 (1963); *United Securities Corporation v. Tomlin,* Del.Super., 198 A.2d 179 (1964); *Farmers Bank of the State of Delaware v. Odom,* Del.Super., 246 A.2d 85 (1968). It must be noted that the Delaware cases applying the Uniform Conditional Sales Act deal with violations of precise specifications of the statute which left no discretion or judgmental latitude. These were absolute requirements to be mechanically followed.[2]

In contrast to this, the Uniform Commercial Code authorized the secured party to "sell, lease or otherwise dispose of" the collateral "following any commercially reasonable" method. 6 *Del.C.* (1974) § 9–504(1). It authorized disposition "by public or private proceedings" and "at any time and place and on any terms" provided such actions were commercially reasonable and were upon reasonable notification. 6 *Del.C.* (1974) § 9–504(3). Under these provisions, the secured party is given broad discretion which is restrained only by general requirements of reasonableness and commercial reasonableness.

Applying the doctrine of "strict adherence on pain of forfeiture of deficiency" was a reasonable result where the requirements were clearly specified in the Uniform Conditional Sales Act. Because of the less

---

2. Notice of intention to retake possession "Not more than 40 nor less than 20 days prior to retaking." 6 Del.C. (1953) § 917. Retain goods in the state for 10 days after retaking, if prior notice not given. § 918. Sale of goods within 30 days after the retaking and 5 days prior notice of sale. §§ 919 & 920. See 4 Anderson, *Uniform Commercial Code,* p. 605, § 9–504:1.

precise standards in the Uniform Commercial Code, this approach is much less persuasive in applying the Uniform Commercial Code.

The draftsmen of the Uniform Commercial Code did not directly face the question of the sale which is not conducted in conformity with the statute. White and Summers, *Handbook of Law Under the Uniform Commercial Code,* p. 1000, § 26–15. It appears that the cases are substantially divided between those which allow deficiency judgment and those which disallow it where the sale does not satisfy the statute. 59 *A.L.R.3d* 371, 401–28. However, it is significant that some of the states which barred deficiency judgment under the Uniform Conditional Sales Act permit deficiency judgment under the Uniform Commercial Code. Compare 49 *A.L.R.2d* 15, 82 & 59 *A.L.R.3d* 371, 401–28.

Another consideration is 6 Del.C. § 9–507(1) which permits the debtor to recover from the creditor "any loss caused by failure [of the creditor] to comply with the provisions of this" statute. This provision has been interpreted to place the burden of proof upon the creditor to show regularity of the sale and to create a presumption that the value of the collateral equalled the debt. 4 Anderson, *Uniform Commercial Code,* pp. 624, § 9–504:30; pp. 643–6, §§ 9–507:5 & 6; White and Summers, *Handbook of the Law Under the Uniform Commercial Code,* pp. 1004–6, § 26–15; Coogan, Hogan, Vagts, *Secured Transactions Under the Uniform Commercial Code* 936 § 8.06[2].

In summary, the Uniform Commercial Code applies a standard of commercial reasonableness to the disposition of collateral by a creditor. In view of the imprecision of that standard, it is not in harmony with the concept of reasonableness which permeates that portion of the Act to hold that the creditor acts at the peril of losing his right to deficiency judgment if he errs in good faith in applying that standard. *Rushton v. Shea,* D.Del., 423 F.Supp. 468 (1976) reached a similar conclusion. Ample compensatory protection for the debtor exists under 6 Del.C. § 9–507(1) discussed above by which any loss suffered by the debtor which may be offset against the deficiency judgment or may result in judgment for the debtor, supported by a presumption favorable to the debtor. To permit more benefit for the debtor is to impose a penalty not justified by the equities of the ordinary debtor-creditor situation.

Defendant's motion for summary judgment is denied. IT IS SO ORDERED.