WILMINGTON TRUST COMPANY, a
Delaware Corporation, Plaintiff Below,
Appellee, Cross-Appellant,

v.

Daniel B. CONNER, Jr., Defendant
Below, Appellant, Cross-Appellee.

Supreme Court of Delaware.

Submitted Sept. 11, 1979.

Decided March 26, 1980.

Martin I. Lubaroff and Alesia Ranney-Marinelli, of Richards, Layton & Finger, and Elwyn Evans, Jr., Wilmington, for plaintiff-appellee, cross-appellant.

Douglas A. Shachtman, of Community Legal Aid Society, Inc., Wilmington, for defendant-appellant, cross-appellee.

Before HERRMANN, C. J., DUFFY and McNEILLY, JJ.

HERRMANN, Chief Justice:

In this action to recover a deficiency judgment under the Delaware Uniform Commercial Code, 6 *Del.C.* § 9–502(2),[1] in an automobile repossession case, we are asked to decide: (1) whether the notice of resale of the automobile after repossession sent by the creditor to the debtor was defective under 6 *Del.C.* § 9–504(3);[2] (2) if so, whether the defective nature of the notice precludes the creditor from obtaining a deficiency judgment under the Code; and (3) whether the debtor, in his counterclaim under 6 *Del.C.* § 9–507(1),[3] is entitled to statutory damages.

I.

On December 6, Daniel B. Conner, the defendant, entered into a conditional sales contract for the purchase of an automobile. The contract was assigned by the automobile dealer to the Wilmington Trust Company, the plaintiff. After failing to make four consecutive monthly installment payments, the defendant defaulted on the contract. Despite efforts to dispose of the vehicle, including advertising in a local newspaper, the defendant was unable to sell the vehicle or meet his obligations. Consequently, on August 22, the defendant voluntarily surrendered the vehicle to the plaintiff.

On August 24, the plaintiff sent to the defendant, by registered mail, written notice stating that the "present balance" of the defendant's account with the plaintiff was \$4,013.09, and that unless payment was "made by September 4, * * * this unit [would] be sold in accordance with applicable law". This notice was received by the defendant on August 28.

The automobile was placed on the plaintiff's lot after repossession and was not sold until about 18 months later. The sale was

1. 6 *Del.C.* § 9–502(2) provides:

"§ 9–502. Collection rights of secured party.

      *     *     *     *     *     *

"(2) A secured party who by agreement is entitled to charge back uncollected collateral or otherwise to full or limited recourse against the debtor and who undertakes to collect from the account debtors or obligors must proceed in a commercially reasonable manner and may deduct his reasonable expenses of realization from the collections. If the security agreement secures an indebtedness, the secured party must account to the debtor for any surplus, and unless otherwise agreed, the debtor is liable for any deficiency. But, if the underlying transaction was a sale of accounts, contract rights, or chattel paper, the debtor is entitled to any surplus or is liable for any deficiency only if the security agreement so provides."

2. 6 *Del.C.* § 9–504(3) provides:

"§ 9–504. Secured party's right to dispose of collateral after default; effect of disposition.

      *     *     *     *     *     *

"(3) Disposition of the collateral may be by public or private proceedings and may be made by way of one or more contracts. Sale or other disposition may be as a unit or in parcels and at any time and place and on any terms but every aspect of the disposition including the method, manner, time, place and terms must be commercially reasonable. Unless collateral is perishable or threatens to decline speedily in value or is of a type customarily sold on a recognized market, reasonable notification of the time and place of any public sale or reasonable notification of the time after which any private sale or other intended disposition is to be made shall be sent by the secured party to the debtor, and except in the case of consumer goods to any other person who has a security interest in the collateral and who has duly filed a financing statement indexed in the name of the debtor in this state or who is known by the secured party to have a security interest in the collateral. The secured party may buy at any public sale and if the collateral is of a type customarily sold in a recognized market or is of a type which is the subject of widely distributed standard price quotations he may buy at private sale."

3. 6 *Del.C.* § 9–507(1) provides:

"§ 9–507. Secured party's liability for failure to comply with this Part.

"(1) If it is established that the secured party is not proceeding in accordance with the provisions of this Part disposition may be ordered or restrained on appropriate terms and conditions. If the disposition has occurred the debtor or any person entitled to notification or whose security interest has been made known to the secured party prior to the disposition has a right to recover from the secured party any loss caused by a failure to comply with the provisions of this Part. If the collateral is consumer goods, the debtor has a right to recover in any event an amount not less than the credit service charge plus 10 percent of the principal amount of the debt or the time price differential plus 10 percent of the cash price."

private and the car was bought for $1,000.00.

The plaintiff brought suit in the Court of Common Pleas claiming that a deficiency was due and owing in the amount of $2,587.69. This amount was later reduced to $2,262.19. The defendant's answer alleged that the notice of resale was defective, that the sale was not commercially reasonable and, therefore, that the plaintiff was barred from collecting a deficiency judgment. The defendant also counterclaimed for statutory damages under § 9-507(1). Upon motion by the defendant, the Court of Common Pleas granted summary judgment in favor of the defendant. The Court held that a debtor was entitled to a statement in the notice of resale of the balance due on an installment sales contract. Since the figure in the notice did not reflect a refund credit of $654.61 for unearned finance charges and insurance premiums, as required by 5 *Del.C.* § 2908 [4] and 5 *Del.C.* § 2906(g), [5] the Court of Common Pleas concluded that the notice was defective under 6 *Del.C.* § 9-504(3). [6] That Court further held that, pursuant to the line of Delaware authority represented by *Commercial Credit Corporation v. Swiderski,* Del.Super., 195 A.2d 546 (1963), the plaintiff was precluded from obtaining any deficiency judgment against the defendant due to the notice defect. In addition, the Court awarded the defendant $1,445.32 in statutory damages under § 9-507(1).

On appeal, the Superior Court reversed the judgment of the Court of Common Pleas. Although it accepted the latter Court's finding that the stated balance in the notice was unduly inflated because of the plaintiff's failure to credit the account with the unearned finance charges and insurance premiums, the Superior Court concluded that such figure is not required under § 9-504(3). Moreover, since the defendant could not show that he had been misled or frustrated in his attempts to redeem the vehicle by this alleged defect, the Superior Court held that the inaccurate balance was not a defect under § 9-504(3) for the purposes of the motion for summary judgment. The Superior Court did agree with the Court of Common Pleas, however, that the notice was defective, since the plaintiff failed to indicate in the notice whether the subsequent sale was to be public or private.

Nevertheless, the Superior Court found that under the line of contrary authority represented by *Associates Financial Services Co., Inc. v. DiMarco,* Del.Super., 383 A.2d 296 (1978), if the creditor-plaintiff could overcome the presumption that the value of the collateral equals the value of the debt it could collect a deficiency judgment. It also concluded that the award of statutory damages was invalid since the defendant had not shown that the collateral was a "consumer good" as required by § 9-507(1).

**4.** 5 *Del.C.* § 2908 states:

"§ 2908. *Credit upon anticipation of payments.*

"Notwithstanding the provisions of any retail installment contract to the contrary, any buyer may pay in full at any time before maturity the debt due under any retail installment contract and in so paying such debt shall receive a refund credit thereon for such anticipation of payments. The amount of such refund shall represent at least as great a proportion of the finance charge as the sum of the monthly time balances after the month in which prepayment is made, bears to the sum of all the monthly time balances under the schedule of payments in the contract, provided, however, that the holder shall not be required to rebate any portion of such unearned finance charge which results in a net minimum finance charge on the contract less than $25; and, provided further

that the holder shall not be required to rebate any unearned finance charge on the amount due computed as set forth in this section, if less than $1."

**5.** 5 *Del.C.* § 2906(g) provides:

"§ 2906. Requirements and prohibitions as to retail installment contracts.

"(g) If any insurance is cancelled, unearned insurance premium refunds received by the holder shall be credited to the final maturing installments of the contract except to the extent applied toward payment for similar insurance protecting the interests of the buyer and the holder or either of them.

**6.** In the Court of Common Pleas the plaintiff contended that it was not required to rebate unearned finance charges and insurance premiums. It has not raised this issue on appeal.

The defendant brought an appeal to this Court citing as error the holdings of the Superior Court that permitted the plaintiff to obtain a deficiency judgment if the specified conditions were met and that disallowed the award of statutory damages in favor of the defendant. The plaintiff cross-appealed from those portions of the Superior Court's decision that held that the notice was defective and that impliedly rejected § 9–507(1) as the debtor's exclusive remedy for dealing with a creditor's failure to comply with the notice provisions of § 9–504(3).

## II.

The defendant contends here that the notice provided him was defective for the following reasons: (1) the balance of the loan was overstated by $654.64; (2) the notice was received only five business days prior to the date after which a sale was to be made; (3) the plaintiff did not intend to sell the collateral quickly and thus, in retrospect, the notice period was unreasonable; and (4) the notice failed to explicitly specify whether the sale was to be public or private. Because of the conclusion we reach on the first of these arguments we need not decide any of the defendant's subsequent contentions.

■ Under the Uniform Commercial Code "reasonable notification" of the disposition must be given to the debtor. § 9–504(3). The Uniform Code, however, relegates the exact definition of "reasonable notification" to the individual states and, ultimately as a general rule, to their courts. See Delaware Study Comment, § 9–504(3). The purpose of the requirement of "reasonable notification" is threefold: (1) it gives the debtor the opportunity to exercise his redemption rights under § 9–506;[7] *Camden National Bank v. St. Clair*, Me.Supr., 309 A.2d 329 (1973); (2) it affords the debtor an opportunity to seek out buyers for the collateral, *First National Bank & Trust Co. of Enid v. Holston*, Okl.Supr., 559 P.2d 440 (1976); and (3) it allows the debtor to oversee every aspect of the disposition, thus maximizing the probability that a fair sale price will be obtained, *Rushton v. Shea*, D.Del., 423 F.Supp. 468 (1976). Any aspect of the notice that is contrary to these purposes necessarily prevents it from being "reasonable notification".

■ The Court of Common Pleas held that the plaintiff's failure to account in the notice for the rebate of unearned finance charges and insurance premiums constituted a defect in the notice. We agree. Certainly the insertion of an unduly inflated figure in the notice discourages and perhaps frustrates the attempts of the debtor to find another buyer or to exercise his redemption rights.

The plaintiff contends that § 9–504(3) does not require that the balance due be stated in the notice for a private sale since it only demands "reasonable notification of the time after which any private sale . . is to be made." Therefore, it is argued, an error in the balance stated cannot be a defect in the notice under § 9–504(3). We cannot accept this conclusion. The adoption of this rationale would lead to the absurd conclusion that the notice of resale may contain misleading information of any kind so long as certain statutory catch words or phrases are also included. Moreover, whether § 9–504(3) requires that the balance due be placed in the notice of resale is tangential to the issue in question. The key issue is whether "reasonable notification" was given. We hold that this notice, which contained a stated balance that was inflated $654.61 above the amount actually owed, was not "reasonable notification".

---

7. 6 *Del.C.* § 9–506 provides:

"§ 9–506. Debtor's right to redeem collateral.

"At any time before the secured party has disposed of collateral or entered into a contract for its disposition under Section 9–504 or before the obligation has been discharged under Section 9–505(2) the debtor or any other secured party may unless otherwise agreed in writing after default redeem the collateral by tendering fulfillment of all obligations secured by the collateral as well as the expenses reasonably incurred by the secured party in retaking, holding and preparing the collateral for disposition, in arranging for the sale, and to the extent provided in the agreement and not prohibited by law, his reasonable attorney's fees and legal expenses."

The plaintiff argues that it was impossible to give the defendant a net balance, since the finance charges and insurance premiums were constantly accruing, and the plaintiff was unable to predict when the collateral would be sold. This argument is unavailing. Had the plaintiff provided the defendant, for example, with a figure as of September 4 with an addendum reasonably and accurately stating a method by which debtor could compute the accruing interest and insurance premiums, this issue might have been decided otherwise. But, in the light of the plaintiff's statutory duty under 5 *Del.C.* §§ 2906(g) and 2908 to rebate unearned finance charges and insurance premiums, a blatant assertion in the notice that the total amount under the contract was due, without reference to such possible rebates, was manifestly unreasonable.

We conclude, therefore, that the notice of resale sent by the plaintiff to the defendant was defective under § 9–504(3).

### III.

Having concluded that the notice of resale was defective, we turn to the effect this conclusion has on the plaintiff's ability to collect a deficiency judgment under the Uniform Commercial Code. A quick resumé of the governing statutory provisions, set forth at length, *supra*, is in order: The creditor's initial right to collect a deficiency judgment is established by § 9–502(2): "If the security agreement secures an indebtedness, the secured party must account to the debtor for any surplus, and unless otherwise agreed, the debtor is liable for any deficiency." Under § 9–504(3), in order for the creditor to dispose of the collateral, he must send to the debtor "reasonable notification of the time and place of any public sale or reasonable notification of the time after which any private sale or other disposition is to be made." If it is shown that the creditor has not disposed of the collateral in accordance with the Code provisions, § 9–507(1) gives "the debtor . . . a right to recover from the secured party any loss caused by a failure to comply with the

provisions of this Part"; and if the collateral is consumer goods, statutory minimum damages are provided for.

The issue presented here is one of first impression in this Court. Under the predecessor to the Code, the Uniform Conditional Sales Act,[8] the format of which was similar to that of the Code, strict compliance with the notice provisions was viewed in Delaware as a condition precedent to the collection of a deficiency judgment. *Farmers Bank of the State of Delaware v. Odom*, Del.Super., 246 A.2d 85 (1968); *United Securities Corporation v. Tomlin*, Del.Super., 198 A.2d 179 (1964); *Commercial Credit Corp. v. Swiderski*, Del.Super., 195 A.2d 546 (1963); *Bowden v. Sussex Studebaker, Inc.*, Del.Super., 3 Storey 66, 164 A.2d 595 (1960). This was also the majority rule elsewhere under the Uniform Conditional Sales Act. E. g., *C.I.T. Corporation v. Haynes*, Me. Supr., 161 Me. 353, 212 A.2d 436 (1963); *Frantz Equipment Co. v. Anderson*, N.J. Supr., 37 N.J. 420, 181 A.2d 499 (1962); Annot.: *Rights and Duties of Parties to Conditional Sales Contract as to Resale of Repossessed Property*, 49 *A.L.R.2d* 15, 82. With the enactment of the Uniform Commercial Code in Delaware in 1967, however, the applicability of such prior case law has come into question.

Currently, there is wide contrariety of judicial opinion regarding the creditor's right to a deficiency under the Uniform Commercial Code when the notice of resale is defective.

The apparent majority rule under the Code, the "absolute bar" theory, remains as it was under the Uniform Conditional Sales Act: failure to comply strictly with the notice provisions of the Code acts as an absolute bar to recovery of a deficiency judgment by the creditor. *Skeels v. Universal C.I.T. Credit Corp.*, W.D.Pa., 222 F.Supp. 696 (1963) (construing Pennsylvania law) *modified on other grounds* (3 Cir.) 335 F.2d 846 (1964); *Atlas Thrift Company v. Horan*, Cal.Ct.App., 27 Cal.App.3d 999, 104 Cal.Rptr. 315 (1972); *Randolph v. Franklin*

8. 6 *Del.C.* § 901 *et seq.* (repealed 1967).

*Investment Co., Inc.,* D.C.Ct.App., 398 A.2d 340 (1979); *Turk v. St. Petersburg Bank & Trust Co.,* Fla.Dist.Ct.App., 281 So.2d 534 (1973); *Gurwitch v. Luxurest Furniture Manufacturing Co.,* Ga.Supr., 233 Ga. 934, 214 S.E.2d 373 (1975); *Stensel v. Stensel,* Ill.Ct.App., 63 Ill.App.3d 639, 20 Ill.Dec. 548, 380 N.E.2d 526 (1978); *Herman Ford-Mercury, Inc. v. Betts,* Iowa Supr., 251 N.W.2d 492 (1977); *Camden National Bank v. St. Clair,* Me.Supr., 309 A.2d 329 (1973); *Cities Service Oil Co. v. Ferris,* Mich.Dist.Ct., 9 U.C.C.R.S. 899 (1971); *Gateway Aviation, Inc. v. Cessna Aircraft Co.,* Mo.Ct.App., 577 S.W.2d 860 (1978); *Bank of Gering v. Glover,* Nebr.Supr., 192 Neb. 575, 223 N.W.2d 56 (1974); *Leasco Data Processing Equipment Corp. v. Atlas Shirt Company,* N.Y. Civ.Ct., 66 Misc.2d 1089, 323 N.Y.S.2d 13 (1971); *FMA Financial Corp. v. Pro-Printers,* Utah Supr., 590 P.2d 803 (1979); *Vic Hansen & Sons, Inc. v. Crowley,* Wis.Supr., 57 Wis.2d 106, 203 N.W.2d 728 (1973); *Aimonetto v. Keepes,* Wyo.Supr., 501 P.2d 1017 (1972).

A second theory, the "shift" theory, espouses the view that once the notice has been established as being defective, the creditor may recover a deficiency, but only to the extent that he can overcome the presumption that the value of the collateral equals the value of the debt. *U. S. v. Whitehouse Plastics,* 5th Cir., 501 F.2d 692 (1974) (applying Texas law); *Kobuk Engineering & Contracting Services, Inc. v. Superior Tank & Construction Co.-Alaska, Inc.,* Alaska Supr., 568 P.2d 1007 (1977); *Norton v. National Bank of Commerce of Pine Bluff,* Ark.Supr., 240 Ark. 143, 398 S.W.2d 538 (1966); *Savings Bank of New Britain v. Booze,* Conn.Super., 34 Conn.Super. 632, 382 A.2d 226 (1977); *Community Management Assoc. of Colorado Springs, Inc. v. Tousley,* Colo.Ct.App., 32 Colo.App. 33, 505 P.2d 1314 (1973); *Walker v. V. M. Box Motor Co., Inc.,* Miss.Supr., 325 So.2d 905 (1976); *Levers v. Rio King Land and Investment Co.,* Nev.Supr., 560 P.2d 917 (1977); *Conti Causeway Ford v. Jarossy,* N.J.Dist.Ct., 114 N.J.Super. 382, 276 A.2d 402 (1971) *aff'd per curiam,* N.J.Super., 118 N.J.Super. 521, 288 A.2d 872 (1972); *Clark*

*Leasing Corp. v. White Sands Forest Prod., Inc.,* N.M.Supr., 87 N.M. 451, 535 P.2d 1077 (1975); *Hodges v. Norton,* N.C.Ct.App., 29 N.C.App. 616, 223 S.E.2d 848 (1976); *Associates Capital Services v. Riccardi,* R.I.Supr., 408 A.2d 930 (1979).

A third view, the "set-off" theory, concludes that the creditor's right to a deficiency judgment is complete, subject only to set-off for the debtor's losses under § 9–507(1). *Chapman v. Field,* Ariz.Supr., 602 P.2d 481 (1979); *Commercial Credit Corp. v. Wollgast,* Wash.Ct.App., 11 Wash.App. 117, 521 P.2d 1191 (1974).

The plaintiff contends that the "shift" or "set-off" theories are the views most consistent with the language and spirit of the Code. Generally, it is argued that the language of § 9–504(2) suggests that a creditor should not be prevented from collecting a deficiency judgment. See *Norton v. National Bank of Commerce of Pine Bluff, supra; Conti Causeway Ford v. Jarossy, supra.*

The plaintiff first contends that the "set-off" theory is the most correct and should be adopted by this Court. It argues that the letter and spirit of Article 9 of the Code mandate that § 9–507(1) be construed as the exclusive remedy for the injured debtor. This conclusion is deduced by the plaintiff from the two following propositions: (1) recovery of a deficiency is not specifically denied by the Code, *Conti Causeway Ford v. Jarossy, supra;* and (2) because § 9–507(1) is the only section of Article 9 to treat damages arising from failure to comply with the Code, and there is silence as to any additional remedy for the debtor, the drafters must have intended § 9–507(1) to be the debtor's exclusive remedy. See *U. S. v. Whitehouse Plastics, supra; Grant County Tractor Co. v. Nuss,* Wash.Ct.App., 6 Wash. App. 866, 496 P.2d 966 (1972).

In the alternative, the plaintiff argues that if § 9–507(1) is not seen as the exclusive remedy, the "shift" theory should be adopted. The plaintiff, like other proponents of the "shift" theory, contend that the "absolute bar" theory is punitive in

nature and contrary to the theme of commercial reasonableness that pervades the Code. *U. S. v. Whitehouse Plastics, supra; Rushton v. Shea, supra; Kobuk Engineering and Contracting Services, Inc. v. Superior Tank & Construction Co.-Alaska, Inc., supra; Associates Financial Services Co., Inc. v. DiMarco, supra; Conti Causeway Ford v. Jarossy, supra; Clark Leasing Corp. v. White Sands Forest Prod., Inc., supra; Hodges v. Norton, supra.* Moreover, they argue that the "shift" theory is inherently more fair. *Savings Bank of New Britain v. Booze, supra; Clark Leasing Corp. v. White Sands Forest Prod., Inc., supra; Hodges v. Norton, supra.* Finally, they contend that § 9–507(1) provides an adequate remedy for the debtor's losses, *Rushton v. Shea, supra; Associates Financial Services Co., Inc. v. DiMarco, supra; Conti Causeway Ford v. Jarossy, supra; Clark Leasing Corp. v. White Sands Forest Prod., Inc., supra; Hodges v. Norton, supra;* and that the contrary results obtained under the Uniform Conditional Sales Act were attributable to the precise notice requirements, which are lacking in the Code. *Associates Financial Services Co. Inc. v. DiMarco, supra; Leasco Computer v. Sheridan Industries, Inc.,* N.Y. Civ.Ct., 82 Misc.2d 897, 371 N.Y.S.2d 531 (1975).

■ We are unpersuaded by the plaintiff's arguments and conclude that Delaware should adhere to the "absolute bar" rule which was well settled in this jurisdiction under the Uniform Conditional Sales Act by *Commercial Credit Corporation v. Swiderski, supra,* and its progeny.

First, we are unable to accept the arguments that § 9–504(2) grants the creditor an undeniable right to a deficiency and that § 9–507(1) is the debtor's exclusive remedy. We note first that the Uniform Conditional Sales Act contained a provision strikingly similar to § 9–507(1). Former 6 *Del.C.* § 925 provided:

"If the seller fails to comply with the provisions of sections 918–921, and 923 of this title after retaking the goods, the buyer may recover from the seller his actual damages, if any, and in no event less than one-fourth of the sum of all payments which have been made under the contract, with interest."

This was not considered to be the exclusive remedy under the Uniform Conditional Sales Act. Moreover, we are unable to find any evidence that its counterpart in the Uniform Commercial Code was intended to be construed differently.

Neither § 9–504(2) nor § 9–507(1) expressly or impliedly deny the applicability of the *Swiderski* rule to cases under the Code. The failure of the drafters or the Legislature to include a provision barring creditors from collecting a deficiency, as relied on by the plaintiff, in no way indicates an intent to deny this remedy to debtors. Indeed, the Code specifically provides that other rules of law may control unless explicitly displaced by provisions of the Code. 6 *Del.C.* § 1–103;[9] Official Comment to § 1–103, 1 *Uniform Laws Annotated* 15 (1960). Furthermore, the Code recognizes the applicability of other remedies as well. Section 1–106(1) provides:

"The remedies provided by this subtitle shall be liberally administered to the end that the aggrieved party may be put in as good a position as if the other party had fully performed but neither consequential not special nor penal damages may be had except as specifically provided in this subtitle *or by other rule of law.*" (Emphasis added)

In the light of these provisions the drafters' failure to provide a section denying a creditor the right to obtain a deficiency cannot be seen as an endorsement of the plaintiff's theory that § 9–507(1) was intended to be the debtor's exclusive remedy.

9. 6 *Del.C.* § 1–103 provides:

"§ 1–103. Supplementary general principles of law applicable.

"Unless displaced by the particular provisions of this subtitle, the principles of law and equity, including the law merchant and the law relative to capacity to contract, principal and agent, estoppel, fraud, misrepresentation, duress, coercion, mistake, bankruptcy, or other validating or invalidating cause shall supplement its provisions."

"[T]he more reasonable conclusion is that precisely because of their learning skill and experience, the drafters of the Uniform Commercial Code, had they truly intended the remedy to be exclusive, would have been scrupulously careful to state it. Their omission of language in § 9–507(1) expressly indicating exclusivity of the remedy thus speaks volumes against the correctness of plaintiff's position."

*Camden National Bank v. St. Clair*, 309 A.2d at 332. See *Atlas Thrift Company v. Horan, supra; Leasco Data Processing Equipment Corp. v. Atlas Shirt Company, supra.*

Finally, the case law under the Uniform Conditional Sales Act was settled by the time of the drafting and adoption of the Code and it is presumed, of course, that the General Assembly was aware of existing law. The failure of the drafters to expressly change the prevailing rule is persuasive evidence of the non-exclusivity of § 9–507(1) and the continued viability of the rule of *Swiderski.*

We must also reject the plaintiff's argument that the "shift" theory provides the more appropriate remedy. Contrary to plaintiff's protestations, we are unable to find any punitive aspects in barring the creditor from obtaining a deficiency judgment when it has provided the debtor with a defective notice. Under the rule of *Swiderski*, the creditor's strict compliance with the notice provisions is a condition precedent to the attainment of a deficiency judgment. Thus, the creditor's ability to collect a deficiency is pre-conditioned on compliance with a statutory remedy in derogation of common law. *Turk v. St. Petersburg Bank & Trust Co., supra; Gateway Aviation, Inc. v. Cessna Aircraft Co., supra.* Failure to adhere to the relevant statute results not in punishment, but merely in the inability to invoke the operation of the remedial statutory provisions.

Plaintiff's arguments that principles of fairness or the remedy provided by § 9–507(1) militate in favor of accepting the "shift" theory are similarly unacceptable.

The burdens placed on the creditor under the Code are minimal, while the results of his noncompliance may be very onerous to the debtor. This unequal relationship has been recognized by numerous cases. *Commercial Credit Corp. v. Lloyd*, D.C.Super. Ct., 12 U.C.C.R.S. 15 (1973); *Stensel v. Stensel, supra; Camden National Bank v. St. Clair, supra; Bank of Gering v. Glover, supra.* We are unable to see any unfairness in protecting the debtor's rights to the exclusion of those of the creditor when the creditor has been placed in such a high degree of control of the relationship and carries such a small burden in order to gain the advantages of the Statute.

Likewise, the adequacy of § 9–507(1) does not require the adoption of the "shift" rule. Indeed, it may be that the inadequacy of § 9–507(1) to protect the debtor's rights has led courts to seek additional deterrents. See *Skeels v. Universal C.I.T. Corporation, supra; Camden National Bank v. St. Clair, supra;* Note: *A Creditor's Right to a Deficiency Judgment Under Article 9 of the Uniform Commercial Code: Effect of Lack of Notice*, 42 Brooklyn L.Rev. 56, 68 (1975).

Finally, we are unable to agree with the plaintiff's argument that the more liberal notice provisions of the Code require divergence from the pre-Code case law represented by *Swiderski*. The liberalization of the notice provisions of the Code, without more, does not necessarily mean that the concomitant remedies for failure to comply also have undergone similar changes. Indeed, as we noted previously there is very little difference between § 9–507(1) and its predecessor, former 6 *Del.C.* § 925. Moreover, while minor deficiencies in the notice provisions may no longer compel the finding that insufficient notice has been given, the mandate still exists to protect debtors from "unreasonable" notice. In the absence of clear contrary legislative intent, this continued need to protect the debtor's interests militates against any lessening of corrective measures.

Therefore, in view of the lack of contrary legislative intent or evidence in the Uniform Commercial Code suggesting the ne-

cessity for change, we adhere to the "absolute bar" rule which was approved in *Swiderski* and has so long prevailed in this jurisdiction, and reject the reasoning of *Rushton v. Shea, supra,* and *Associates Financial Services Co., Inc. v. DiMarco, supra.* The "absolute bar" rule has the advantage of certainty in a situation in which the lender enjoys a position of domination and control and the consumer-debtor is in a subordinate position in need of the protection the "absolute bar" rule affords.

Accordingly, in the instant case, we hold that the plaintiff is barred from obtaining a deficiency judgment against this defendant.

### IV.

Turning now to the defendant's appeal from the dismissal of his counterclaim for statutory damages under § 9–507(1): In order to be eligible for such an award of statutory damages, a debtor must show that the creditor violated its duty under § 9–504(3) and that the collateral is a "consumer good" under § 9–507(1).[10] Since it has already been established that the plaintiff's notice of resale was defective, the only remaining issue is whether the automobile constituted a "consumer good" under the Statute.

The Superior Court found that no evidence had been presented by the defendant to show that the collateral was, in fact, a "consumer good". The defendant argues that the ruling of the Superior Court was improper, since this was not raised in the Court of Common Pleas regarding an ordinary passenger automobile. The plaintiff

contends that the decision was proper and that the issue was raised in oral argument.

Appeals from the Court of Common Pleas to the Superior Court are to be determined from the record below and are not to be tried de novo. 10 *Del.C.* § 1318;[11] Superior Court Civil Rule 72(g).[12] It is also the general rule in this State that issues not raised in the trial court shall not be heard on appeal. *Equitable Trust Co. v. Gallegher,* Del.Supr., 77 A.2d 548 (1950). On the record before us in this case, we are unable to find that the "consumer good" issue was raised in the Court of Common Pleas. Whether the full record in this case would have borne out the plaintiff's contentions, we cannot say. The plaintiff had the burden of producing the portions of the record relevant to its contentions on appeal; it has not met this burden.

We must therefore conclude that the Superior Court erred in reversing the judgment of the Court of Common Pleas granting statutory damages to the defendant.

This opinion shall have prospective application only, except for this case and all other cases pending on appeal in this Court on the date hereof.

Reversed and remanded for further proceedings in accordance herewith.

10. 6 *Del.C.* § 9–109(1) provides:
   "§ 9–109. Classification of goods; 'consumer goods'; 'equipment'; 'farm products'; 'inventory.'
   "Goods are
      "(1) 'consumer goods' if they are used or bought for use primarily for personal, family or household purposes;"

11. 10 *Del.C.* § 1318 provides in pertinent part:
   "§ 1318. Appeal in civil actions.
   "From any order, rule, decision, or judgment of the Court in a civil action, the aggrieved party shall have the right of appeal to the Superior Court of the State in and for the county in which the judgment was rendered in

the same manner as is provided by law as to causes tried before justices of the peace, except that appeals to the Superior Court shall be reviewed on the record and shall not be tried de novo. The Superior Court shall have the power to implement this section by rule."

12. Superior Court Civil Rule 72(g) provides in pertinent part:
   "(g) Procedure for Handling Appeals. Appeals shall be heard and determined by the Superior Court from the record of proceedings below, except as may be otherwise expressly provided by statute. . . . ."