933 So.2d 34 (2006)
GENERAL MOTORS ACCEPTANCE CORP., a Delaware corporation authorized to do business in Florida, Appellant,
v.
HONEST AIR CONDITIONING & HEATING, INC., Cory Babcock and William Stevenson, Appellees.
No. 2D05-3583.
District Court of Appeal of Florida, Second District.
May 12, 2006.
Rehearing Denied June 27, 2006.
*35 Frank A. Montefusco, Marie P. Montefusco, and Marcus C. Aguirre of Moody, Jones & Montefusco, PA, Plantation, for Appellant.
George R. McLain and Daniel Joy of George R. McLain, Chartered, Sarasota, for Appellees.
CASANUEVA, Judge.
In this appeal following a nonjury trial, General Motors Acceptance Corp. (GMAC) appeals from an adverse final judgment determining that its automobile retail installment sale contract was a negotiable instrument as defined by chapter 673, Florida Statutes (2001). The judgment also found that because GMAC's conduct impaired the value of the debtor's collateral, no damages were due to GMAC from defendants Cory Babcock and Honest Air Conditioning & Heating, Inc. ("Honest Air").[1] On appeal, GMAC asserts that the trial court erred in determining that the retail installment sale contract (RISC) was a negotiable instrument and that this error allowed defendants Babcock and Honest Air to avail themselves of protections afforded by section 673.6051(5).[2] We conclude that the court erred in finding that the RISC is a negotiable instrument. However, we affirm because GMAC, by its business practices and conduct, bore the risk of loss in its transactions involving Mr. Babcock and Honest Air.[3]
The evidence demonstrated that in September 2001, Cory Babcock and Honest Air contracted with Cox Chevrolet for the purchase of a new 2001 Chevrolet Corvette. The RISC, which was immediately assigned to GMAC, obligated Mr. Babcock and Honest Air to make monthly payments beginning in November 2001 to satisfy the total indebtedness of $52,516.20 at a zero percent interest rate.
On August 22, 2002, Honest Air and Mr. Babcock traded the Corvette to Florida Auto Brokers as part of the purchase of another vehicle. At that time, GMAC had perfected its security interest in the Corvette so that the vehicle title reflected GMAC's lien. In September 2002, GMAC *36 telephoned Mr. Babcock regarding the monthly payment due on the Corvette. Mr. Babcock advised that he had traded the vehicle, but he promised to and did later contact Florida Auto Brokers regarding the Corvette trade transaction and the payoff amount due to GMAC. However, not until December 2002 was Mr. Babcock able to inform GMAC that the local dealership would be mailing GMAC the payoff on the Corvette along with instructions as to the vehicle's title.
In December 2002, Florida Auto Brokers sent its check in the amount necessary to satisfy the lien to GMAC. Almost immediately upon receipt, GMAC placed the check for payment, released the lien, and forwarded the title to the Corvette. Unfortunately, Florida Auto Brokers' check was dishonored for insufficient funds after the title had been forwarded.[4]
In July 2003, GMAC sued Honest Air and Mr. Babcock for $35,815.26 as damages resulting from the breach of the terms of the RISC. Honest Air and Mr. Babcock asserted a number of affirmative defenses, including an allegation that GMAC had impaired the value of the collateral to its prejudice by releasing the lien before payment was successfully credited to its account. Furthermore, they contended, because the value of the collateral exceeded the indebtedness after appropriate credit to the amount claimed by GMAC, no damages were due from them.
At the nonjury trial, Honest Air and Mr. Babcock asserted that the RISC was a negotiable instrument and that they were entitled to the application of and operation of sections 673.6051(6) and (7), which provide that either failure to maintain perfection of the interest in collateral or to preserve the value of the collateral discharges the debtors to the extent that the impairment would cause the debtors to pay more than they would have been obligated to pay had the impairment not occurred. In its written judgment, the trial court concurred that section 673.6051 applied, found that the value of the collateral exceeded the amount claimed by GMAC, and rendered judgment in favor of Honest Air and Mr. Babcock.
Our analysis of this case begins with chapter 673, which is titled Uniform Commercial Code: Negotiable Instruments. Section 673.1041(1) generally defines a negotiable instrument as "an unconditional promise or order to pay a fixed amount of money, with or without interest or other charges described in the promise on order." Additionally, it must be "payable to bearer or to order at the time it is issued or first comes into possession of a holder" and "payable on demand or at a definite time." § 673.1041(1)(a), (b). A negotiable instrument, by definition, "[d]oes not state any other undertaking or instruction by the person promising or ordering payment to do any act in addition to the payment of money." § 673.1041(1)(c).
In contrast, the RISC in this case creates a series of obligations upon the vehicle purchaser, requiring the buyer "to buy the vehicle on credit under the agreement"; "to pay the creditor the amount financed and finance charge according to the payment schedule"; and to give "the creditor a security interest" in the vehicle. The RISC sets forth additional instructions or undertakings by both the "person promising" payment and by the creditor *37 "ordering payment." Among other things, the debtor agrees not to remove the vehicle from the United States and to reimburse advances made by the creditor in payment of repair or storage bills, and the creditor agrees to dispose of the collateral in certain ways following repossession. The RISC also obligates the buyer to pay fees for late payment or dishonored checks. All of these undertakings bring the RISC within the exclusionary language of section 673.1041(1)(c), which provides that a negotiable instrument "does not state any other undertakings" in addition to the payment of money. A negotiable instrument should be "simple, certain, unconditional, and subject to no contingencies. As some writers have said, it must be a[']courier without luggage.'" Mason v. Flowers, 91 Fla. 224, 107 So. 334, 335 (1926).
The Uniform Commercial Code comment to section 673.1041 provides, in part:
Words making a promise or order payable to bearer or to order are the most distinguishing feature of a negotiable instrument and such words are frequently referred to as "words of negotiability." Article 3 is not meant to apply to contracts for the sale of goods or services or the sale or lease of real property or similar writings that may contain a promise to pay money. The use of words of negotiability in such contracts would be an aberration.
The comment further provides:
Although such a writing cannot be made a negotiable instrument within Article 3 by contract or conduct of its parties, nothing in Section 3-104 or in Section 3-102 is intended to mean that in a particular case involving such a writing a court could not arrive at a result similar to the result that would follow if the writing were a negotiable instrument. § 673.1041, Fla. Stat. Ann. (1993). Thus, the comment clarifies that Article 3 was not intended to apply to a contract for the sale of an automobile; nevertheless, nothing in Article 3 would prevent a court from arriving at a decision "similar to the result that would follow" if the RISC were a negotiable instrument.
Although Honest Air and Mr. Babcock are not entitled to relief based upon section 673.6051, we must determine whether relief due to the alleged impairment of collateral is otherwise available. At the conclusion of the trial, the court found that GMAC improvidently released its lien on the Corvette as a result of its business strategy. There is ample competent, substantial evidence to support the trial court's finding that GMAC's business practices resulted in the loss of its security. GMAC's representative testified that it was not the company's policy to verify that a dealership check cleared with sufficient funds before releasing its lien. Because GMAC has such a large number of accounts, there is no practical way for the company to be notified when a particular check has cleared the bank. Each bank has a different clearance time. Furthermore, GMAC receives thousands of payoff checks every day for vehicles on which it holds liens, and fewer than one-half percent of those checks are returned for insufficient funds. It is apparent that in the commercial setting in which it operates, GMAC of necessity bears some risk of loss.
This court's function is not to evaluate the economic prudence of GMAC's policies. However, since GMAC's policy regarding checks tendered in satisfaction of a RISC does not include insuring that the check is backed by sufficient funds, GMAC cannot by following that policy transfer the risk of loss from nonpayment to an innocent purchaser. When GMAC released the lien *38 prior to receipt of the funds, it permitted the Corvette to be transferred to a third party for value, thus depriving Honest Air and Mr. Babcock of their right to dispose of the Corvette in a manner that would satisfy their obligation under the RISC to pay GMAC in full. The Florida statutes[5] and UCC sections applicable to retail installment contracts place minimal burdens on creditors such as GMAC, but the result of their noncompliance can be extremely onerous to the debtor. See Wilmington Trust Co. v. Conner, 415 A.2d 773, 777 (Del.1980) (commenting on an Article 9 case), cited in State Nat'l Bank v. N.W. Dodge, Inc., 108 Ill.App.3d 376, 64 Ill.Dec. 26, 438 N.E.2d 1345, 1349 (1982) (also arising under Article 9). Therefore, when exercising its right to payment in full before releasing its lien, GMAC is obligated to perform that function properly.
Finally, there is competent, substantial evidence to support the trial court's finding that the value of the Corvette at the time of the disposition exceeded the debt remaining on the zero interest RISC. Therefore, we affirm the trial court's judgment in favor of Honest Air and Babcock and against GMAC.
Affirmed.
ALTENBERND and LaROSE, JJ., Concur.
NOTES
[1] The final judgment did find in favor of GMAC against defendant William Stevenson, who is not a party to this appeal.
[2] Section 673.6051(5) provides, in pertinent part:

If the obligation of a party to pay an instrument is secured by an interest in collateral and a person entitled to enforce the instrument impairs the value of the interest in collateral, the obligation of an indorser or accommodation party having a right of recourse against the obligor is discharged to the extent of the impairment.
[3] We note that the trial court made no oral findings as to the nature of the contract at issue. The final judgment was prepared by the attorney for defendants Babcock and Honest Air, who had argued at the hearing that the contract was a negotiable instrument and that a defense under section 673.605 was available in this case. The court's oral decision, however, was that GMAC's business practices were the cause of the loss it suffered.
[4] At the time of the trial, Florida Auto Brokers was no longer in business. Defendant William Stevenson is the Florida Auto Brokers salesman who handled the Corvette transaction and who entered a stipulation for settlement with GMAC. Because the evidence demonstrated that Mr. Stevenson defaulted under the terms of the settlement, the trial court entered final judgment against him.
[5] The Florida Legislature has enacted provisions applicable to the sale of motor vehicles in part 1 of chapter 520, Florida Statutes (2001), the Motor Vehicle Sales Finance Act, which defines a retail installment contract as

an agreement, entered into in this state, pursuant to which the title to, or a lien upon the motor vehicle, which is the subject matter of a retail installment transaction, is retained or taken by a seller from a retail buyer as security, in whole or in part, for the buyer's obligation.