SPRECHER, Circuit Judge.
 

 This case involves an appeal of an order of involuntary bankruptcy. In affirming the order of involuntary bankruptcy, we hold, first, that the decision of a bankruptcy court whether to abstain is not reviewable. Second, we hold that creditors holding disputed claims are not, because of those disputes, disqualified from petitioning for involuntary bankruptcy. But third, we hold that, in some circumstances, a dispute can affect whether nonpayment of a debt should be counted in determining whether a debtor is generally paying debts as those debts become due. We hold that bankruptcy courts, prior to issuing an order of invol
 
 *879
 
 untary bankruptcy, must initially examine the dispute. If the dispute is of an entire claim, and if resolution of the dispute will not require substantial litigation, bankruptcy courts must, on the record, balance the interests of fairness to a debtor against harm to creditors in determining whether nonpayment of the disputed debts should be counted against the debtor.
 

 I
 

 In 1978, Royal and Norma Covey, husband and wife, formed a partnership for the sale of Dodge cars and trucks in Kewanee, Illinois, under the trade name “Covey Dodge.” The Covey dealership rented property from Anderson Dodge, Inc. Covey Dodge suspended operations on November 7, 1979, and closed its doors a few days later. Two months after Covey Dodge closed its doors, Chrysler Credit Corporation (“Chrysler Credit”) filed an involuntary bankruptcy petition in federal bankruptcy court. Three months after that petition was filed, the Coveys, filed a complaint against Chrysler Credit and Chrysler Corporation (“Chrysler Motors”) in federal district court alleging, among other things, violations of the federal Automobile-Dealers’ Day in Court Act, 15 U.S.C. § 1221 et seq.; violations of the federal antitrust laws; fraud; breach of contract; and violations of certain Illinois laws. After these actions had been filed, the Coveys requested the bankruptcy court to abstain from hearing the involuntary bankruptcy petition until resolution of the district court actions. The bankruptcy court declined to abstain. Thereafter, Chrysler Motors and Anderson Dodge intervened in the bankruptcy proceeding. The three creditors allege trade debts of approximately $109,000. The Coveys dispute approximately all but approximately $500 of these debts.
 

 After a hearing, the bankruptcy court found in favor of all of the petitioning creditors and adjudged the Coveys bankrupt. The district court affirmed without opinion, and the Coveys now appeal to this court. The Coveys argue, first, that the bankruptcy court should have abstained from hearing the bankruptcy petition. Second, the Coveys argue that the creditors who petitioned for involuntary bankruptcy did not properly qualify as petitioning creditors under the Bankruptcy Code. Third, the Coveys argue that they generally were paying their debts as those debts came due.
 

 II
 

 We begin with the abstention question. The Coveys moved the bankruptcy court under 11 U.S.C. § 305
 
 [1]
 
 and 28 U.S.C. § 1471(d),
 
 [2]
 
 to abstain from hearing the bankruptcy case until the district court had heard their actions against the creditors. The bankruptcy court declined to abstain. The Coveys now appeal that decision not to abstain. But the Coveys’ appeal on the abstention decision is barred by the plain language of the statutes. Both statutes provide that the decision not to abstain “is not reviewable by appeal or otherwise.”
 
 See
 
 notes 1 and 2,
 
 supra.
 
 The Covey brief, selectively quoting the statutes, makes no reference to the “not reviewable” corn-
 
 *880
 
 mand.
 
 [3]
 
 But ignoring the statute will not make it go away.
 

 As Justice Reed stated in
 
 United States v. American Trucking Ass’ns., Inc.,
 
 310 U.S. 534, 543, 60 S.Ct. 1059, 1063, 84 L.Ed. 1345 (1940), “[t]here is, of course, no more persuasive evidence of the purpose of a statute than the words by which the legislature undertook to give expression to its wishes.” Or, as stated in
 
 United States v. Hartwell,
 
 6 Wall. 385, 396, 18 L.Ed. 830,
 
 quoted in United States v. Shreveport Grain & Elevator Co.,
 
 287 U.S. 77, 83, 53 S.Ct. 42, 44, 77 L.Ed. 175 (1932), “[i]f the language be clear it is conclusive.” In this case, the statutory prohibition against appellate review is clear and, therefore, conclusive. As the court stated in
 
 In re Unit Parts Co.,
 
 9 B.R. 386, 7 BCD 368, 370, CCH Bankruptcy Law Reports ¶ 67,940 (Bkrtcy.W.D.Okla.1981), “[t]he last sentence of section 1471(d) could not express more pointedly that the Bankruptcy Court’s decision, either to abstain or not to abstain is ‘not reviewable by appeal or otherwise.’ ” Therefore, we find that the Coveys’ argument on this issue is merit-less.
 

 Ill
 

 The Coveys’ second argument is that the creditors who petitioned for involuntary bankruptcy did not properly qualify as petitioning creditors under the Bankruptcy Code. In an involuntary bankruptcy action, where a debtor has more than 12 creditors, three creditors are required, to bring the action. Each creditor must be the holder of a claim that is not contingent as to liability, and the claims must aggregate at least $5,000 more than the value of any lien or property of the debtor securing such claims. 11 U.S.C. § 303(b)(1).
 

 In this case, it is not disputed that the Coveys had more than twelve creditors. Chrysler Credit initiated the involuntary bankruptcy. Later, Chrysler Motors and Anderson Dodge joined in the action. 11 U.S.C. § 303(c) provides that after an involuntary petition has been filed, other creditors may join the petition with the same effect as if the joining creditor were a petitioning creditor. The bankruptcy court found that each of the three petitioning creditors is the holder of a claim against the Coveys which is not contingent as to liability and that the claims aggregate at least $5,000 more than the value of any lien on the Coveys’ property. The Coveys challenge these findings as clearly erroneous. We now consider the claims of each creditor.
 

 A
 

 Chrysler Credit’s claim is based on two transactions, a capital loan and a floor plan arrangement. After the Coveys defaulted, Chrysler Credit repossessed the inventory of new and used vehicles and sold them. It then sold, at a public auction, the equipment held by the Covey dealership. After crediting the proceeds of these sales to the Coveys, Chrysler Credit contended that the
 
 *881
 
 Coveys owed them over $55,000 on the capital note and floor plan. This figure has been subsequently revised by Chrysler Credit to be over $90,000.
 

 The Coveys argue that Chrysler Credit has no claim under Illinois law because it did not give proper notice to the Coveys of its sale of the assets of the Covey dealership.
 
 [4]
 
 This failure to give notice, the Coveys argue, bars any deficiency judgment for Chrysler Credit.
 

 It may be true that Chrysler Credit did not give proper notice. When considered in the subsequent bankruptcy proceedings, this failure may bar or reduce any deficiency judgment in favor of Chrysler Credit.
 
 [5]
 
 But the dispute regarding notice does not disqualify Chrysler Credit from
 
 initiating
 
 the involuntary bankruptcy proceeding.
 

 The provisions of the Bankruptcy Code are quite liberal in allowing holders of claims to bring involuntary petitions. Under 11 U.S.C. § 101(4)(A), a “claim” means a “right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured.” 11 U.S.C. § 303(b)(1) gives the right to be a petitioning creditor to any holder of a claim except the holder of a claim contingent as to liability. As the court stated in
 
 In re All Media Properties, Inc.,
 
 5 B.R. 126, 132, 2 BCD2d 449 (Bkrtcy.S.D.Tex.1980), under the new Code:
 

 [Tjhere is no longer any requirement that the claims be provable in order for an involuntary petition to be brought. Only holders of claims that are contingent as to liability are denied the right to be petitioning creditors. It is significant that holders of unmatured, disputed and unliquidated claims are not specifically barred from being petitioning creditors.
 
 [6]
 

 See In re Kreidler Import Corp.,
 
 4 B.R. 256, 258 (Bkrtcy.D.Md.1980) (“under the new code, disputed claims are nonetheless claims”). Thus, the dispute regarding Chrysler Credit’s claim does not bar Chrysler Credit from participating as a creditor in the involuntary bankruptcy petition.
 

 B
 

 We now consider Chrysler Motors’ claim against the Coveys. Chrysler Motors argues that it was owed over $27,000, since adjusted to over $25,000, by the Coveys for parts and accessories. The Coveys argue that Chrysler’s claim was not proven by testimony and that the figures were arrived at from Chrysler Motors’ records, which are disputed by the Coveys.
 

 But, again, the Covey argument really is merely that the Coveys dispute the amount of Chrysler Motors’ claim, not that Chrysler Motors has no claim. As we have discussed, that a creditor’s claim is disputed does not disqualify a creditor from joining an involuntary bankruptcy petition. The
 
 *882
 
 Coveys will have ample opportunity to litigate their disputes with Chrysler Motors in the subsequent bankruptcy proceedings. Therefore, we reject the Coveys’ argument that Chrysler Motors does not qualify as a creditor in the involuntary bankruptcy petition.
 

 C
 

 The third creditor to join the involuntary bankruptcy petition was the Coveys’ landlord for the dealership property, Anderson Dodge. Anderson Dodge claims that it is owed $68,000 for rent. The Coveys argue that their lease with Anderson Dodge was fully paid through November 15, 1979. They argue that Anderson Dodge filed suit for rent against the Coveys on November 14, 1979, but that no money was owed to Anderson on that date. Therefore, the Coveys argue, Anderson Dodge did not properly qualify as a petitioning creditor.
 

 Once again, although the Coveys may have an argument in another proceeding, their attempt to disqualify Anderson Dodge as a creditor in this involuntary bankruptcy proceeding must fail. Although Anderson Dodge filed suit against the Coveys on November 14, 1979, it joined this involuntary bankruptcy proceeding on June 6, 1980. The Coveys do not contend that their rent was paid through June 6, 1980. Thus, Anderson Dodge has a claim against the Coveys. That the Coveys may have valid grounds
 
 [7]
 
 to seek dismissal or a directed verdict of Anderson Dodge’s other suit against them does not affect Anderson Dodge’s status as a creditor in this proceeding. Nor, of course, does any Covey defense to the Anderson Dodge claim in this proceeding disqualify Anderson Dodge as a creditor. As we have emphasized, a disputed claim remains a “claim”. Thus, we reject the Covey argument that Anderson Dodge does not qualify as a creditor in this involuntary bankruptcy proceeding.
 

 IV
 

 The Coveys’ final argument is a thorny one. They argue that, even if the disputed debts do not disqualify their creditors, the disputed debts must be excluded from the bankruptcy court’s calculation of whether the Coveys were generally paying their debts as those debts became due.
 

 The Bankruptcy Code, 11 U.S.C. § 303(h)(1), requires that in an involuntary bankruptcy, a debtor must be proven to be “generally not paying such debtor’s debts as such debts become due.” As we have discussed, that a claim is disputed does not disqualify a creditor. But now, the Coveys argue that disputed debts should not be examined in determining whether debtors are generally paying debts as those debts become due.
 

 In examining the “generally paying debts” question, the Coveys propose that a court divide all debts into two categories, disputed and undisputed, and only consider the latter category. Citing
 
 All Media,
 
 5 B.R. at 144, the Coveys argue that “[tjhere is no apparent reason why a debtor should have to pay disputed debts to avoid the entry of an order of relief.” The Coveys maintain that, if the debts to Chrysler Credit, Chrysler Motors, and Anderson Dodge are not considered, they have been paying their other debts as those debts have become due.
 

 The Coveys seem to ask for a universal rule excluding disputed debts from the calculation of “generally paying debts.” But the policy considerations regarding such a rule do not unanimously support either exclusion or inclusion of disputed debts from the “generally paying debts” calculation. On the one hand, a debtor should not be forced to pay disputed debts in order to avoid an involuntary bankruptcy.
 
 All Media,
 
 5 B.R. at 144. But on the other hand, an important goal of the new Bankruptcy Code is to ensure prompt resolution of the question of whether a debtor is generally paying its debts in an initial proceeding, reserving the litigation of specific disputes and defenses for subsequent proceedings.
 
 Id.
 
 at 134. Creditors are entitled to a
 
 *883
 
 prompt resolution of the “generally paying debts” question in order to prevent wasting of assets and in order to ensure that they receive all of their rights to the debtor’s property afforded by the Code.
 
 Id., citing
 
 Report of the Commission on the Bankruptcy Laws of the United States, 1973, Part I at 186.
 

 This question is one of first impression for our court. Because the Code is silent as to the calculation of disputed debts, and because there are solid policy reasons in support of both creditors’ and debtors’ interests, we conclude that there cannot be any absolute rule that disputed debts either should or should not be considered with regard to the “generally paying debts” standard. Rather, we conclude that the bankruptcy courts should initially examine the dispute and, under certain circumstances, should then balance the interests of creditors and debtors with regard to the Code’s specific goals of prompt resolution of the initial involuntary bankruptcy determination.
 
 [8]
 

 First, bankruptcy courts must initially examine the nature of the dispute claimed. If the debtor merely has a colorable dispute as to the
 
 amount
 
 of a claim, there is no reason why the debt should be excluded in the determination of the “generally paying debts” standard. As we have discussed, the goals of the new Code, in such cases, are to resolve the question of whether the debts are paid first, and to examine the disputes and defenses later.
 
 All Media,
 
 5 B.R. at 134-35.
 

 Second, if the debtor disputes the entire claim, then the bankruptcy courts must consider the complexity of the litigation required. If the debtor’s dispute of the entire debt will require substantial litigation of either legal or factual issues, that litigation should occur later.
 
 All Media,
 
 5 B.R. at 135-36. Thus, the debtor’s argument must be clearly persuasive. If the dispute will require substantial litigation, or if the “substantial litigation” question itself will itself require substantial litigation, there is no reason to reach the “dispute” issue initially. The disputed debt, then, should be counted in the determination of “generally paying debts.”
 

 Third, if the debtor’s dispute of the entire claim will not require substantial litigation, bankruptcy courts should then carefully balance, with their reasoning articulated on the record, creditors’ interests against the debtor’s interest. This balancing process will require a precise analysis of the danger to creditors’ interests from some delay in the litigation of the bankruptcy determination against the danger of harm to a debtor by unfairly forcing a debtor holding a legitimate dispute of an entire claim into involuntary bankruptcy.
 

 If the debtor’s interests in 'avoiding the involuntary bankruptcy outweigh the creditors’ interests in a more rapid decision, then the bankruptcy courts should reach the “dispute” issue. If the debtor does establish that the entire debt is barred or otherwise invalid, then the disputed debt should be excluded from the “generally paying debts” calculation. But if the bankruptcy courts determine that the creditors’ interests in a rapid decision outweigh the debt- or’s interest in litigating the dispute, the bankruptcy courts should not reach the merits of the dispute; the disputed debts should be considered regarding the “generally paying debts” standard.
 
 See generally, All Media,
 
 5 B.R. at 134-36.
 

 Where the scales seem equally balanced, because the new Code emphasizes prompt resolution of the involuntary bankruptcy question without litigation of specific disputes, we conclude that bankruptcy courts should not exclude the disputed debts from the “generally paying debts” calculation.
 
 Id.
 
 Thus, disputed debts should be excluded from the “generally paying debts” determination only under the following circumstances: 1) the dispute is whether any claim exists, ■ not merely regarding the
 
 *884
 
 amount of a claim; 2) the dispute can be examined without substantial litigation of legal or factual questions; and 3) the interests of the debtor in defeating an order of involuntary bankruptcy outweigh creditors’ interests in achieving a somewhat more rapid determination of the involuntary bankruptcy question.
 

 In this case, the bankruptcy court did not discuss the nature of the Coveys’ disputes. Nor did the bankruptcy court articulate a balance between harm to the creditors and harm to the debtor. In the future, we shall expect a careful statement of reasons from a bankruptcy court. But because this issue is one of first impression for our court, we do not find the failure to specifically discuss the disputes, and the balancing process, fatal in this case.
 

 Here, the Coveys, first, do dispute the entire claim of Chrysler Credit. Second, the Coveys’ argument that Chrysler Credit’s debt is absolutely barred will not require complex litigation. Although there is a divergence of authority regarding the “absolute bar” theory,
 
 see Stensel v. Stensel,
 
 63 Ill.App.3d 639, 643, 20 Ill.Dec. 548, 380 N.E.2d 526, 529, the issue is narrow and precisely framed. We assume, arguendo, that the factual determination of what notice was given will not require substantial litigation.
 
 [9]
 
 But the Coveys’ disputes regarding the claims of Chrysler Motors and Anderson Dodge are not so clear. To the extent that the Coveys’ disputes of these claims can be characterized as disputes of the entire claims, those disputes require complex factual investigations. Thus, it would not be necessary to balance the debt- or’s interests against the creditors’ interests.
 

 But even if the creditors’ interests were balanced against the debtor’s interests, the result of that balancing process does not support the Coveys’ position. First, a strong factor weighing against the Coveys is that they had voluntarily closed their dealership. There was no ongoing business to be harmed by the stigma of an involuntary bankruptcy.
 

 Second, the Coveys’ disputes seem to represent strategic gamesmanship. The Coveys are not just disputing some of their business debts, as the debtors in
 
 All Media,
 
 who disputed 24% of their new accounts payable. 5 B.R. at 144. Rather, the Coveys are disputing 99*/2% of their business debts. Thus, we conclude that the Coveys' interests do not outweigh the interests of the creditors in an expeditious determination of the bankruptcy question in order to avoid waste of assets.
 

 In sum, although we would prefer a more detailed analysis from the bankruptcy court, and we now state that we shall expect such analyses in the future, we conclude that the bankruptcy court’s decision here to consider the disputed debts with regard to the “generally paying debts” test was proper. In this case, to require exclusion of the disputed debts from that calculation would be to allow a debtor to evade involuntary bankruptcy solely by raising a red flag of dispute.
 

 V
 

 We conclude that, if the debts to Chrysler Credit, Chrysler Motors, and Anderson Dodge are considered, the bankruptcy court’s determination that the Coveys were not “generally paying their debts as those debts became due” within the meaning of 11 U.S.C. § 303(h)(1) was not erroneous. Therefore, the district court’s decision affirming the bankruptcy court’s order of involuntary bankruptcy is
 

 AFFIRMED.
 

 [1]
 

 . 11 U.S.C. § 305 provides, in pertinent part:
 

 § 305. Abstention
 

 (a) The court, after notice and a hearing, may dismiss a case under this title, or may suspend all proceedings in a case under this title, at any time if—
 

 (1) the interests of creditors and the debtor would be better served by such dismissal or suspension;
 

 (c) An order under subsection (a) of this section dismissing a case or suspending all proceedings in a case, or a decision not so to dismiss or suspend, is not reviewable by appeal or otherwise.
 

 [2]
 

 . 28 U.S.C. § 1471(d) provides:
 

 (d) Subsection (b) or (c) of this section [conferring jurisdiction for bankruptcy cases on district courts and providing that the bankruptcy courts shall exercise that jurisdiction] does not prevent a district court or a bankruptcy court, in the interest of justice, from abstaining from hearing a particular proceeding arising under title 11 or arising in or related to a case under title 11. Such absten
 
 *880
 
 tion, or a decision not to abstain, is not reviewable by appeal or otherwise.
 

 [3]
 

 . The Coveys point to only one case in support of their abstention argument. That case, which they misquote, and whose holding they egregiously distort, has nothing to do with abstention or the review of a decision whether to abstain. The Coveys state that the court in
 
 Yellin v. East Coast Mechanical Contractors, Inc.,
 
 2 BCD 1309, 1310 (1976) “held” that “where 'the alleged debt consists of a disputed claim which cannot be resolved without prolonged litigation. . . ’ the Court should appropriately abstain from hearing the case.” Covey Br. at 7.
 

 First, the Coveys misquote the passage from
 
 Yellin.
 
 The words “either as to liability or as to amount” were in the
 
 Yellin
 
 decision between “resolved” and “without”. These words were deleted in the Covey brief, but no ellipsis was inserted. Second, the
 
 Yellin
 
 holding, contrary to the Coveys’ statement, has nothing whatever to do with abstention. The
 
 Yellin
 
 court was discussing the requirement of section 59b of the Bankruptcy Code that an unliquidated claim “shall not be counted in computing the number and the aggregate amount of the claims of the creditors ... if the court determines that the claim or claims cannot be readily determined .. . without unduly delaying the decision upon the adjudication.” 2 BCD at 1310. The
 
 Yellin
 
 court found, in this regard, that the creditor was disqualified. Thus, the
 
 Yellin
 
 decision provides no support for the Coveys.
 

 [4]
 

 . Section 9-504(3) of the Uniform Commercial Code, Ill.Rev.Stat. ch. 26 § 9-504(3), provides, in pertinent part:
 

 Unless collateral is perishable or threatens to decline speedily in value or is of a type customarily sold on a recognized market, reasonable notification of the time and place of any public sale or reasonable notification of the time after which any private sale or other intended disposition is to be made shall be sent by the secured party to the debtor, if he has not signed after default a statement renouncing or modifying his right to notification of sale.
 

 [5]
 

 . As discussed later in this opinion, courts have taken differing views of the effect of improper notice. One view is that improper notice absolutely bars any deficiency judgment. The other view is that improper notice does not wipe out the entire deficiency, but allows a debtor to receive consequential damages.
 
 See Stensel v. Stensel,
 
 63 Ill.App.3d 639, 643, 20 Ill.Dec. 548, 380 N.E.2d 526, 529 (1978). Because of our disposition of this case, we need not, and do not, reach the issue of the effect of improper notice.
 

 [6]
 

 .The
 
 All Media
 
 court continued:
 

 Furthermore, § 303 indicates that there is a difference between a disputed claim, an un-matured claim, an unliquidated claim and a contingent claim. Otherwise, there would be no necessity to include the word contingent. Stated another way, just because a claim is unliquidated, disputed or unmatured apparently does not mean it is contingent.
 

 5 B.R. at 133.
 

 [7]
 

 . We express no opinion on this question.
 

 [8]
 

 . A thoughtful approach to this question is found in the analysis in
 
 All Media,
 
 5 B.R. at 133-36, 144. Although the
 
 All Media
 
 court did not refer to a “balancing” process per se, its approach embodies an analysis we believe appropriate.
 

 [9]
 

 . Of course, if the factual problem of what notice was given would appear to require substantial litigation, that problem alone would be sufficient for a determination that the “notice” litigation should occur at subsequent proceedings.