**In re R.N. SALEM CORPORATION,
Debtor.**

No. C–1–82–1339.

United States District Court,
S.D. Ohio, W.D.

April 14, 1983.

R. Edward Tepe, Cincinnati, Ohio, for appellant/creditor Wayne Dalton Corp.

George K. Fogg, Cincinnati, Ohio, for appellee/debtor R.N. Salem Corp.

OPINION AND ORDER AFFIRMING THE BANKRUPTCY COURT'S DISMISSAL OF INVOLUNTARY PETITION

SPIEGEL, District Judge:

Petitioners, Glass City Spring Corp., Telectron, Inc., and Wayne-Dalton Corp. (Wayne-Dalton), commenced this case on August 20, 1982 by filing an involuntary petition under Chapter 7 of the Bankruptcy Code, 11 U.S.C. § 303, against R.N. Salem Corporation (Salem Corp.). Salem Corp. answered, denying the petitioners were qualified to file the involuntary petition and denying that it was not generally paying its debts as they came due. Following an evidentiary, hearing, the Bankruptcy Court, 23 B.R. 452, held that the petitioners were qualified to file the involuntary petition, 11 U.S.C. § 303(b)(1), but that they had failed to prove that Salem Corp. was generally not paying its debts as they came due, 11 U.S.C. § 303(h)(1). Accordingly, the Bankruptcy Court dismissed the involuntary petition.

Wayne-Dalton brings this appeal arguing that the Bankruptcy Court applied the improper legal standard in excluding a disput-

ed debt prior to making the 303(h)(1) determination that the debtor was generally paying its debts as they came due. The matter came before this Court for a hearing on the supporting memorandum and reply memorandum of the appellant Wayne-Dalton (docs. 3, 8) and the memorandum in opposition of appellee Salem Corp. (doc. 7).

On the basis of our review of the record on appeal, the briefs, and the arguments of counsel, we affirm. In the future, however, we expect that the Bankruptcy Court will elaborate on the standard it is applying in deciding whether or not a disputed debt should be included. Nevertheless, on the basis of this record we find that exclusion of the disputed debt was appropriate. Moreover, we find that, once that debt was excluded, the conclusion that the debtor was generally paying its debts as they came due is not clearly erroneous.

I. *Introduction*

Salem Corp. is in the business of selling automatic garage doors. Wayne-Dalton, a manufacturer of garage doors, has been supplying Salem with doors on a consignment basis since 1977. Wayne-Dalton would ship goods to Salem's warehouse. Each month the Wayne-Dalton representative would take inventory at the warehouse; that inventory became the basis for Wayne-Dalton's billing of Salem Corp. Payment was due thirty days after the end of the month. In early 1982 Salem Corp. was put on a C.O.D. basis.

Testimony at the evidentiary hearing established that as of the date of the hearing Salem Corp. had an unpaid balance with petitioning creditor Telectron of something in excess of $6,700.00, but also that in April, 1982 Telectron had agreed with Salem upon a payment schedule of $1,000.00 per month. Salem had made payments pursuant to this agreement in June, July, and August.

The second petitioning creditor, Glass City Spring Corp., testified that on the date the petition was filed it was owed $516.60 by the debtor. This debt was based upon two invoices, one payable August 20, 1982 and the other, August 27, 1982. The first of these invoices was paid September 3, 1982. A check on account of the second invoice was sent, but returned because it was improperly addressed; the envelope with that check was post-marked August 22, 1982. Payment was tendered to Glass a few days before and again at the hearing. The Bankruptcy Judge specifically found that both Telectron and Glass City joined in the petition upon the solicitation of Wayne-Dalton.

To establish that Salem Corp. was not paying its debts as they came due, Wayne-Dalton called an expert witness, Edward L. Cromer, Jr., a partner in the accounting firm of Price Waterhouse retained by the petitioning creditors to review Salem Corp.'s financial records. Price Waterhouse examined the aging of the Salem Corp.'s accounts payable for June, July and August, 1982. Based upon this study, Mr. Cromer testified that ninety percent of debtor's accounts payable were past due and that Salem Corp. was not paying its debts as they came due. Upon cross-examination, Mr. Cromer stated that when the study upon which he based his opinion was done, he was unaware that any of the debts were disputed or of any payment schedule agreements other than those reflected by the invoices.

The Price Waterhouse analysis of Salem Corp.'s accounts payable (petitioner's ex. 11) reveals a total accounts payable of $397,996.96, $364,047.13 of which was owed to Wayne-Dalton. Of the amount owed to Wayne-Dalton, $340,038.61 was overdue. Of the $33,949.83 owed to other creditors, $15,561.16 was overdue ($13,838.95 of this amount had been due for more than ninety days).

R.N. Salem, president of the debtor corporation, then testified on behalf of the corporation. A large part of his testimony consisted of describing the disputes about the amount owed to Wayne-Dalton. These disputes, which date back to 1978, revolve around the amount of credits due to Salem from Wayne-Dalton for returned or defective goods. In addition, Mr. Salem asserted that he had a claim in an unspecified

amount against Wayne-Dalton pursuant to an alleged oral exclusive dealership agreement. The Bankruptcy Judge concluded that there were "genuine areas of dispute about the claim and this is the reason it is not being paid." He also pointed out that "Salem testified that without any question, some amount was owed by debtor to Wayne-Dalton" (p. 4, decision of the Bankruptcy Court, entered October 5, 1982).

Mr. Salem also testified that Wayne-Dalton held a secured interest in Salem Corp.'s inventory, machinery, equipment, and accounts receivable which he valued at $288,000.00 total. Wayne-Dalton also holds a second mortgage on real estate belonging to Mr. Salem personally in addition to Mr. Salem's personal guarantee of the corporation's obligation to Wayne-Dalton. Mr. Salem testified that the value of the second mortgage is $310,000.00 and that his net worth is $600,000.00.

The Bankruptcy Judge found first that the petitioning creditors had met their burden under section 303(b)(1) of demonstrating that their claims aggregated at least $5,000.00 more than the value of any liens securing these claims. He then addressed the question of whether the petitioning creditors had demonstrated, as required by section 303(h)(1), that Salem Corp. was not generally paying its debts as they came due. He found that there was a genuine dispute about the overage account payable to Wayne-Dalton and, therefore, excluded the Wayne-Dalton arrearage from the determination. Judge Perlman stated:

> It would simply not make sense to do otherwise. The provision at § 303(h)(1) is intended to be a test of insolvency, and where a debt is not being paid for demonstrably other reasons than insolvency, the test is not met. *See also In re All Media Properties,* 2 C.B.C.2d 449, 469–70, 5 B.R. 126 (B.J.S.D.Tex.1980). P. 8, Bankruptcy Court opinion.

He added that Cromer's testimony that Salem was not generally paying its debts as they became due was based on the total accounts payable, not on the accounts payable excluding amounts owed to Wayne-Dalton.

The Bankruptcy Court then stated that the record alone, independent of Mr. Cromer's testimony, did not satisfy the "generally not paying" standard. He compared the approximately $14,000.00 in accounts payable older than ninety days to creditors other than Wayne-Dalton and the approximately $16,000.00 in total past due accounts payable to creditors other than Wayne-Dalton with the almost $400,000.00 in total accounts payable including amounts owed to Wayne-Dalton. Judge Perlman concluded that:

> [t]his evidence alone, undistinguished as to number and amount of creditors, as well as uninformative about the comparative relationship to current accounts, cannot show compliance with the test of § 303(h)(1). P. 9, Bankruptcy Court opinion.

Finally, the Court addressed the creditors' reliance on *Matter of Covey,* 650 F.2d 877 (7th Cir.1981), which states that whether a disputed claim should be included in the "generally not paying" calculation should be decided on a case-by-case basis. The Court wrote that it had applied such a test here and further that *Covey* was distinguishable because that debtor, unlike Salem Corp., had ceased to do business.

The issue on appeal is how the Bankruptcy Court should treat debts disputed by the debtor for the purposes of deciding whether "the debtor is generally not paying such debtor's debts as such debts become due." 11 U.S.C. § 303(h)(1). Appellant Wayne-Dalton asserts that the Bankruptcy Court erred by excluding the disputed debt. Appellant grounds its appeal upon the leading case on the treatment of disputed debts, *Matter of Covey,* 650 F.2d 877 (7th Cir. 1981), and upon a district court opinion and two bankruptcy court decisions applying *Covey. Matter of Bokum Resources Corp.,* 26 B.R. 615 (D.N.M.1982); *Matter of SPL International Hawaii Ltd.,* Bkrtcy. No. 82–00549 (Bkrtcy.D.Haw. Dec. 15, 1982); *Matter of B.D. International Discount Corp.,* 15 B.R. 755 (Bkrtcy.S.D.N.Y.1981).

The appellee Salem Corp. responds that the Bankruptcy Court properly applied *Covey* because the dispute goes to the existence of the claim rather than the amount. Moreover, it argues that *Covey* is distinguishable because the debtor there had ceased doing business unlike Salem Corp. and finally that the interest of Salem Corp. in not being adjudicated a bankrupt exceeds Wayne-Dalton's interest as a creditor.

## II. *"Generally Not Paying" Determination*

■ An involuntary case is commenced by filing with the Bankruptcy Court a petition under Chapter 7 or 11

> by three or more entities, each of which is a holder of a claim against such person that is not contingent as to liability . . . if such claims aggregate at least $5000 more than the value of any lien on property of the debtor securing such claims held by holders of such claims. 11 U.S.C. § 303(b)(1)

It is obvious from the language of the Bankruptcy Code as well as the case law that the right to be a petitioning creditor does not depend on the existence of an undisputed claim. Section 303(b)(1) gives the right to initiate involuntary proceedings to any holder of a claim so long as the claim is not contingent as to liability. Claim is defined in section 101(4)(A) as the "right to payment whether or not . . . disputed." *See also Covey*, 650 F.2d at 881.

■ That the Code does not bar holders of disputed claims from being petitioning creditors is evidence of Congressional intent that "even holders of disputed claims should be able to seek a determination of whether a debtor is generally not paying its debts as they become due." *In re All Media Properties, Inc.*, 5 B.R. 126 (Bkrtcy.Tex.1980), *aff'd* (on the basis of the Bankruptcy Court's opinion) 646 F.2d 193 (5th Cir.1981). However, once the holder of the disputed claim exercises its right to file the involuntary petition and the debtor timely challenges the petition, the Bankruptcy Court must determine, after trial, whether the debtor is

generally not paying its debts as they become due. 11 U.S.C. § 303(h)(1).[1] The burden is upon the petitioning creditors to demonstrate that the debtor is generally not paying its debts as they become due. *In re SBA Factors of Miami*, 13 B.R. 99 (Bkrtcy.S.D.Fla.1981).

■ Where a debt is disputed, the section 303(h)(1) determination is obviously a two-step process. First, the Bankruptcy Court must determine whether or not a particular disputed debt should be included in the calculation. Having decided which disputed debts, if any, should be included, the Court must then decide whether the debtor is generally paying its debts as they come due.

■ Our task here is to determine whether the Bankruptcy Court used the proper procedure in deciding whether to include the disputed Wayne-Dalton debts. Rule 810, Rules of Bankruptcy Procedure. A Court's conclusions of law—such as the standard to be applied to a disputed debt—is freely reviewable on appeal. *United States v. Mississippi Valley Generating Co.*, 364 U.S. 520, 81 S.Ct. 294, 5 L.Ed.2d 268 (1961); *Matter of Multiponics, Inc.*, 622 F.2d 709, 713 (5th Cir.1980). If we conclude the debt was properly excluded, then we must examine whether than Bankruptcy Court's finding that the debtor was generally paying its debts as they came due was clearly erroneous. Bankruptcy Rule 810; *Multiponics*, 622 F.2d at 709. A party seeking to reverse the Bankruptcy Court's findings of fact on appeal has the burden of proving that the findings are clearly erroneous; merely showing that the Bankruptcy Court could have reached another conclusion on the evidence presented is not sufficient. *In re Huntington Ltd.*, 654 F.2d 578, 583 (9th Cir.1981).

### A. *Treatment of Disputed Debts: The Standard to be Applied*

The leading case on the treatment of disputed debts in making the "generally not paying" determination of section 303(h)(1)

---

[1] An alternative ground for an order of relief is the appointment of a custodian within 120 days before the date of the filing of the petition. 11 U.S.C. § 303(h)(2).

is *Matter of Covey, supra.* In that case the Court concluded that given the Code's silence on this issue and the strong policy arguments in support of both creditors' and debtors' interests, an absolute rule either excluding or including such debts would not be appropriate. The Court then developed a three-part test for determining whether disputed debts should be included. In summary, the *Covey* standard is that

Disputed debts should be excluded from the "generally paying debts" determination only under the following circumstances:

1. The dispute is whether any claim exists, not merely regarding the amount of a claim;
2. The dispute can be examined without substantial litigation of legal or factual questions; and
3. The interests of the debtor in defeating an order of involuntary bankruptcy outweigh creditors' interest in achieving a somewhat more rapid determination of the involuntary bankruptcy question. 650 F.2d at 883–84.

The Court also stated that the Bankruptcy Court should articulate the reasons for its decision on the record. Although not necessary to its conclusion that all three challenged debts should be included, the *Covey* Court concluded that the creditors' interest outweighed those of the debtors. Two factors weighing against the debtor were that the debtor had voluntarily closed its business and that it was disputing 99½% of its business debt. *Id.* at 884.

Appellant here insists that *Covey* governs and that an analysis of the facts as found by the Bankruptcy Court and supported by the record on appeal requires that the disputed debt to Wayne-Dalton be included. First, appellant argues that the dispute goes to the amount—not the existence of the claim—and, therefore, the debt should be included. Second, even if the dispute did go to the existence of the claim, the parties agree that substantial litigation would be required to resolve the dispute and, therefore under *Covey* the disputed debt should be included. Finally, even if substantial

litigation were not required, the creditors' interest in a speedy resolution outweighs the debtors' interest in not being forced into bankruptcy and thus, according to appellant, the debt should be included. Appellant also points out that *Covey* requires that if the debtor's interest is greater than that of the creditor then the Bankruptcy Court

should reach the 'dispute' issue. If the debtor does establish that the entire debt is barred or otherwise invalid, then the disputed debt should be excluded. 650 F.2d at 883.

In summary, appellant argues that *Covey* requires either that the disputed debt be included or that the Bankruptcy Court decide the merits of the dispute.

■ We agree with appellant that a strict application of *Covey* would require the inclusion of the debt. However, we are not bound by *Covey.* Our own Court of Appeals has not addressed the particular issue. Accordingly, we reject a strict application of *Covey.* We find that a balancing analysis which weighs the interests of the creditors against those of the debtor the proper approach in determining whether a disputed debt should be included.

■ It seems fairly clear that application of the *Covey* test will generally result in the inclusion of disputed debts. We find the result harsh, for we do not believe a debtor should have to pay legitimately disputed debts to avoid bankruptcy. *See In re All Media Properties, Inc.,* 5 B.R. 126, 144 (Bkrtcy.Tex.1980). Furthermore, a rigid application of *Covey* may enable creditors to use the involuntary petition as a collection device where debts are disputed, a strategy which if widely employed would paralyze bankruptcy courts. Congress intended the Bankruptcy Code as a shield for debtors, not a sword for creditors.

On the other hand, it is equally apparent that it was not the intention of Congress that a debtor be able to avoid bankruptcy by merely disputing the existence or amount of a claim. Furthermore, creditors are entitled to a speedy determination so that if the debtor is generally not paying its

debts the creditors' rights can be protected and the debtor can be prevented from wasting creditors' assets. Report of the Commission on the Bankruptcy Laws of the United States, 1973, Part I at 186.

The resulting tension between the rights of the debtor and those of the creditor is inherent in the Bankruptcy Code. We thus agree with the *Covey* Court that an absolute rule either including or excluding disputed debts is inappropriate. 650 F.2d at 882. However, we find the *Covey* test overly favorable to creditors and conclude it should be used as a guideline only. In our view, the essential question requires the Court to weigh the creditors' interest against those of the debtor. In other words, the first two steps of the *Covey* analysis should be utilized in the balancing process—not precede, and in many cases perhaps preclude—the balancing analysis. Significantly, the courts applying *Covey*, even though they find that the first and/or second steps of the *Covey* test require inclusion of the disputed debt, go on to weigh the creditors' interest against those of the debtor. In each case the Court has concluded that the interests of the creditors are greater than those of the debtor, a conclusion that dictates inclusion of the debts. *See Bokum, supra, SPL, supra,* and *BD International, supra. See also In re Blaine Richards & Co., Inc.,* 16 B.R. 362, 365 (Bkrtcy.E.D.N.Y.1982) discussing *Covey* and noting that policy considerations became more difficult where the only debt is a disputed one owed to a single creditor.

The *Covey* Court and the three courts adopting that approach refer to the creditors' interest in a speedy determination as a factor weighing in favor of inclusion of disputed debts. Too much weight should not be accorded this interest. The creditor's interest in speedy determination is protected insofar as it can file an involuntary petition even though the claim is disputed. 11 U.S.C. § 303(b)(1). Once the petition is filed, it is up to the Court to be sure that the "not generally paying" determination is made expeditiously. The Bankruptcy Code gives the creditor a right to a speedy determination of the "not generally

paying" determination only. The creditors bear the burden of establishing that the debtor is generally not paying its debts in order to trigger the additional protections of the Bankruptcy Code. If the creditor is unsuccessful in meeting this burden, then he has no right to a speedy determination of anything.

■ The Bankruptcy Court here stated that it was excluding the disputed debt, but did not explain its rationale for doing so other than to state it "would simply not make sense" to include it. It also stated that "where a debt is not being paid for demonstrably other reasons than insolvency" the generally not paying test has not been met. The reasons why a debt is not being paid, however, are irrelevant to the section 303(h)(1) calculation. The statutory language is clear that the only factor to be considered is that of payment. However, the reasons why a debt is disputed may well bear on the threshold question of whether a disputed debt is to be included. Once that decision is made then the fact-finder can address the generally not paying issue.

Although the Court stated it had used *Covey's* case-by-case approach, it clearly did not adopt *Covey's* three-step analysis. Neither did it enumerate the factors upon which it relied in deciding that the Wayne-Dalton debt should be excluded.

■ However, the record before us is sufficiently developed that we may conduct the balancing analysis which in the future the Bankruptcy Court should engage in. Because we conclude that Salem's interests in not being forced into involuntary bankruptcy outweigh those of the creditors, we find that the Bankruptcy Court properly excluded the Wayne-Dalton debt prior to making the generally not paying determination.

■ First, as noted earlier, the creditors' interest in a speedy determination was satisfied by the filing of the involuntary petition. Second, Wayne-Dalton holds a security interest in the debtor's inventory and equipment which it can enforce in state

court if it feels itself insecure. It also holds a security interest in the personal real estate of the debtor corporation's major shareholder, Mr. Salem. Although a security interest in property that would not be included in the bankrupt's estate does not make the secured party a secured creditor for purposes of the bankruptcy, we do find it a factor to be included in the balancing equation. In other words, Wayne-Dalton is not without other remedies if the involuntary petition is dismissed. In open court counsel for Wayne-Dalton stated that it did not seek its remedy in state court because that remedy would take far more time and afford it far less protection than the remedies available from the Bankruptcy Court. That may well be true, but alone is not sufficient to justify including the disputed debt for purposes of forcing Salem Corp. into involuntary bankruptcy. Moreover, the debtor has not voluntarily terminated its business, unlike the debtors in *Covey* and *BD International,* nor does it apparently intend to, unlike the debtor in *SPL.* Accordingly Salem Corp. has a greater interest in avoiding the stigma of involuntary bankruptcy than did those three debtors.[2]

■ Wayne-Dalton insists that section 303(i), which permits the Bankruptcy Court to award costs, attorney's fees, and proximate damages, plus punitive damages if a petition is filed in bad faith, where the involuntary petition is dismissed other than upon the consent of all petitioners and the debtor, adequately protects the interest of the debtor and that, therefore disputed debts that meet the *Covey* test should be included. We disagree. Money damages are an inadequate remedy for the harm done to an ongoing business by an involuntary petition.[3]

Having concluded that the debtor's interests in this case outweigh those of Wayne-Dalton and, therefore, that the disputed debt should be excluded, we find ourselves in agreement with the Bankruptcy Court's conclusion although not with its process. In the future, we anticipate the Bankruptcy Court will do this balancing analysis on the record so that the district court will know the basis for the Court's decision to exclude or include a disputed debt.

**B. The Generally Not Paying Calculation**

The next step is to review the Bankruptcy Court's conclusion that the debtor was generally paying its debts as they came due. Although we would have preferred some amplification of its reasoning, we do not find the Bankruptcy Court's determination clearly erroneous. Accordingly, we affirm.

■ The language of 303(h)(1) is not very helpful in establishing what Congress intended by "generally not paying its debts as such debts come due." Despite the Committee on the Judiciary's observation that this equity insolvency test would be easy to apply, Notes of the Committee on the Judiciary, Senate Report No. 95–989 (1978), experience has proved otherwise. *See Matter of B.D. International Discount Corp.* 15 B.R. 755, 762 (Bkrtcy.S.D.N.Y.1981) and cases cited therein. We conclude, therefore, that Bankruptcy Courts have a responsibility to spell out for the record the basis of their finding that the test has or has not been satisfied.

The Bankruptcy Court here stated that figures "undistinguished as to number and amount of creditors, as well as uninformative about their comparative relationship to current accounts, cannot show compliance with the test of § 303(h)(1)." We agree

---

2. *Bokum, supra* is also distinguishable. After the involuntary petition was filed, a purportedly independent third party offered to buy the claims of the creditors. It was subsequently revealed that the "independent" party was a former president and significant shareholder of the debtor corporation and that his offer to buy creditors' claims was for the express purpose of stopping the bankruptcy.

3. The Court in *SBA Factors* summarized some of the damage done by filing an involuntary petition:

An allegation of bankruptcy is a charge that ought not be made lightly. It usually chills the alleged debtor's credit and his sources of supply. It can scare away his customers. It leaves a permanent scar, even if promptly dismissed. 13 B.R. at 101.

with the standard expressed, but are not totally persuaded that the evidence presented by the creditors was as "undistinguished" and "uninformative" as the Court believed. In addition, the Bankruptcy Court reached its conclusion by comparing the somewhat less than $16,000.00 of overdue accounts with the Wayne-Dalton debt excluded against the total amount of current and overdue debt—*including* the Wayne-Dalton account—of almost $400,000.00. We agree with appellant that the Court has thus weighed apples against apples and oranges. The better procedure would be to compare the overage non-Wayne-Dalton accounts against the total non-Wayne-Dalton accounts (or approximately $14,000.00 against approximately $34,000.00, *see* petitioner's ex. 11).

If we were considering this question *de novo*, we might decide that the creditors had met the 303(h)(1) test and find that the debtor was not generally paying its debts as they came due. Our role as a reviewing court, however, is limited and we must not disturb the facts as found by the Bankruptcy Court unless they are clearly erroneous. We do not believe that the 303(h)(1) standard involves merely comparing percentages. Instead we agree with the standard apparently utilized by the Court here and clearly enunciated by the Bankruptcy Court in *All Media:*

> [T]he court believes that generally not paying debts includes regularly missing a significant number of payments to creditors or regularly missing payments which are significant in amount in relation to the size of the debtor's operation. Where the debtor has few creditors the number which will be significant will be fewer than where the debtor has a large number of debtors. Also, the amount of the debts not being paid is important. If the amounts of missed payments are not substantial in comparison to the magnitude of the debtor's operation, involuntary relief would be improper. 5 B.R. at 143.

These are determinations which can best be made by the Bankruptcy Court as the trier of fact. In the future, we would expect that the Bankruptcy Court would state both the standard it is utilizing and the facts upon which it bases its conclusion. However, because we conclude on this record that the Wayne-Dalton debt should have been excluded and because we cannot find the Court's subsequent determination that the debtor was generally paying his debts clearly erroneous, we cannot substitute our judgment for that of the Bankruptcy Court.

Accordingly, the decision of the Bankruptcy Court to dismiss the involuntary petition is affirmed.

SO ORDERED.