# IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

BRITANNY HAAS,      :

     :      C.A. No. K18A-04-001 WLW

        Petitioner-Below,      :

        Appellant,      :

     :

     v.      :

     :

STANLEY WILSON,      :

     :

        Respondent-Below,      :

        Appellee.      :

Submitted: January 2, 2019
Decided: March 25, 2019

## ORDER

Upon an Appeal from the Decision of the
Kent County Court of Common Pleas
*Reversed and Remanded.*

Sean M. Lynn, Esquire of The Law Offices of Sean M. Lynn, P.A., Dover, Delaware; attorney for Appellant.

Tiffany M. Shrenk, Esquire of MacElree Harvey, Ltd., Centreville, Delaware; attorney for Appellee.

WITHAM, R.J.

## INTRODUCTION

Before the Court is Appellant Brittany Haas' (hereinafter "Appellant")[1] appeal of the Kent County Court of Common Pleas' (hereinafter "Court of Common Pleas" or "court") denial of her petition to change her son's surname by hyphenating it with her new married name.

For the reasons that follow, the Court of Common Pleas erred as a matter of law in denying the Appellant's petition to hyphenate her son's surname to the mom's previously existing surname because it analyzed the petition under the combined standards of "best interest of the child" and Section 5904(b), Title 10 of the Delaware Code, rather than section 5904(b) solely, as our Legislature has intended. As a consequence, this Court **REVERSES and REMANDS** this case to the Court of Common Pleas, where it shall apply the correct standard pursuant to section 5904(b).

## FACTUAL AND PROCEDURAL HISTORY

1. On March 22, 2018, the Appellant filed a petition in the Court of Common Pleas seeking to hyphenate her son, Channing's, given surname "Wilson," with her new married surname "Haas."[2] The Appellant complied with all applicable statutory and court rules.

2. Stanley Wilson, Channing's natural father, however, opposed the Petition.

3. At the hearing held in the Court of Common Pleas, the court heard

---

[1] The Court notes that there was some initial confusion regarding the Appellant's status, since she was identified as both Appellant and Appellee by her counsel in the Opening and Reply briefs. The Court reconciled this discrepancy and determined that Mrs. Haas was in fact an Appellant.

[2] If the petition had been granted, the child's name would be "Channing Lane Wilson-Haas."

testimony from the Appellant, Appellee, and Channing's stepmother, Megan Mullen. From that testimony, the Court discerns the following.

4. Channing's parents were married in January 2010. During their five plus year marriage, the Appellant chose to keep her maiden surname Mills and at all times during the marriage, the Appellee's surname has been Wilson.

5. Channing, the Appellant and Appellee's only child, was born during the marriage on August 21, 2012, and was given the same surname as his father.

6. The Appellant and Appellee separated in 2013 and divorced in 2015.

7. The Appellant remarried and continued to use her surname of Mills until approximately a year and a half into her second marriage, when she changed her surname to her husband's surname, Haas.

8. To date, the Appellant has never had the same surname as Channing.

9. Custody and placement of Channing is governed by a custody order entered by the Delaware Family Court. Under the order, the Appellant has primary placement of Channing, and the Appellee has visitation with him every other weekend, three weeks over the summer, and alternating holidays. The Appellee, has maintained his visitation with Channing except when deployed or at required military training.

10. At the hearing, the Appellant testified as to the reasons why she wanted to hyphenate Channing's surname to Wilson-Haas. First, the Appellant contended that the change would benefit Channing by helping him better fit into the Haas family. As a byproduct, the Appellant stated her belief that the name change would bring Channing closer to both the Wilson and Haas families, despite the fact that Channing will still have a different surname then the rest of the Haas family. The Appellant

3

further asserted that Channing's surname as presently constituted presented problems with scheduling Channing's medical appointments and negatively impacted her interactions with doctors because she was asked multiple times, over a five year period, what her relationship was to Channing.

11. The crux of the Appellee's testimony was his *belief* that Channing is confused by the proposed name change and does not understand what his name is or means. The Appellee testified that he currently does not have sufficient visitation to counteract the Appellant's and her husband's attempts to disrupt his relationship with Channing[3] and that the Appellant has blocked virtually all his attempts to seek an alteration of the visitation schedule by placing conditions that the Appellee must agree.[4] The Appellee further testified that Channing has referred to him as "Stanley," instead of "Daddy," which he believed was directly encouraged by both the Appellant and her husband and was causing his relationship with Channing to suffer.[5]

12. Ms. Mullen, the wife of the Appellee, echoed the Appellee's testimony regarding the Appellant and her husband's attempts to damage the Appellee and Channing's relationship, but provided some evidence to back her belief. She

---

[3] See TR at 33, 37 (the Appellee testified that the Appellant does not share pertinent medical information with him regarding Channing, including his Autism diagnosis, and that there are constant conflicts between the Appellant, Mr. Haas, and the Appellee which at times has resulted in Mr. Haas leaving derogatory telephone messages for the Appellee).

[4] TR at 39 (the Appellant offered the Appellee 50/50 custody of Channing, only if he agreed to her relocation to Houston, Texas).

[5] The Appellee testified that he had video and text messages that would demonstrate this argument, but yet, he did not submit them to the lower court to consider as evidence.

specifically stated that Channing started addressing the Appellee as "Stanley," after Appellant's relocation petition had been denied. She also testified regarding specific examples of Channing's confusion regarding his present name and stated that Channing had never confused his name until the Appellant's most recent petition. She further testified that since the petition was filed, Channing has directly stated to her that his "mommy got [him] a brand new name" that was Wilson-Haas.

13. The Court of Common Pleas issued a bench order directly after the hearing testimony and denied the Appellant's petition. In denying the petition, the court analyzed the evidence based on the ten factors that followed the "best interest of the child" legal standard.

14. On April 20, 2018, nine days after the court's verbal order, the court issued an Amended Order. In the Amended Order, the court recognized the "[c]ourt did not fully address the recent addition of [10] *Del. C. § 5409*, which includes a separate provision for cases where a petition requests a hyphenation of a child's name."[6]

15. Accordingly, the court, in its Amended Order, reconsidered the section 5409(b) factors, but instead of an analysis based on those four factors alone, the court held that "[the Appellee], has *in addition to showing that granting the petition is not in the child's best interest*, has shown by clear and convincing evidence, that the totality of the four factors demonstrated that granting the name change petition would

---

[6] Order, *Petition to Change Name of Channing Lane Wilson to Channing Lane Wilson-Haas*, C.A. No. CPU5-18-000188 at 2.

5

cause the minor child more harm than benefit."[7] As a result, the court again denied the Appellant's petition to hyphenate Channing's surname.

16. The Appellant filed a Notice of Appeal in this Court on April 23, 2018, appealing the Court of Common Pleas April 11, 2018 verbal order.

17. The Appellee moved for dismissal of the appeal on May 18, 2018. The Appellee asserted that the Appellant's appeal should be dismissed as moot because the Court of Common Pleas, in its Amended Order, applied the correct factors and standard pursuant to 10 *Del. C.* § 5904.

18. The Appellant, unsurprisingly, opposed the motion. In her second assignment of error, the Appellant raised the issue of whether the Court of Common Pleas established in its reasoning that the Appellee had demonstrated clear and convincing evidence required to rebut the presumption pursuant to section 5904(b) that the hyphenation should be granted. This Court, based on that ground, dismissed the Appellee's Motion to Dismiss, and will now decide the Appellant's appeal on the merits.

## PARTIES' CONTENTIONS

19. The Appellant, on appeal, argues that the decision by the Court of Common Pleas must be overturned. The Appellant argues that the lower court: (1) did not properly account for the statutory presumption set forth in 10 *Del. C.* § 5904 that favors hyphenation of a child's name; (2) the decision's reasoning did not establish that there was *clear and convincing evidence* that hyphenation of the minor child's

---

[7] *Id.* (Emphasis added).

6

name would cause the child more harm than benefit; and (3) relied upon inapposite case law that has been clearly abrogated by the passage of 10 *Del. C.* § 5904.

20. The Appellee, in opposition, argues that the Appellant's appeal should be denied because the scope of the appeal does not include alleged errors in the Amended Order.[8] He further asserts that the Court of Common Pleas' decision relied on clear and convincing evidence demonstrated by the Appellee that it concluded a name change at that time would result in more harm than benefit to Channing.[9]

## LEGAL STANDARD OF REVIEW

21. The Superior Court has statutory authority to review final decisions from the Court of Common Pleas.[10]

22. Appeals from the Court of Common Pleas to the Superior Court are to be determined from the record below and are not to be tried de novo.[11]

23. In an appeal from the Court of Common Pleas to the Superior Court, the standard of review is whether there is legal error, whether the trial court's factual

---

[8] *See* n. 28.

[9] The Appellee further argues that it was improper for the Appellant to present as an evidentiary exhibit a Delaware Family Court order from March 17, 2017 because it was not made a part of the record in the lower court. However, the Appellee directly testifies regarding the visitation petition in his testimony. TR-34. As it appears to the Court that the lower court was not presented this specific evidence at its hearing, the Court agrees with the Appellee and will not consider it in its decision regarding this appeal.

[10] 10 *Del. C.* § 1326 (From any final order, ruling, decision or judgment of the court in a civil action there shall be the right of appeal to the Superior Court of the State in the county in which said order, ruling, decision or judgment was rendered.).

[11] *Wilmington Trust Co. v. Connor*, 415 A.2d 773, 781 (Del. 1980).

findings are sufficiently supported by the record, and whether those findings are the product of an orderly and logical reasoning process.[12] Findings of the lower court that are supported by the record must be accepted by the reviewing court even if, acting independently, it would have reached a contrary conclusion.[13]

## DISCUSSION

24. After a review of the record, the Court finds that the lower court did indeed fail to account for the new statutory presumption pursuant to our Legislature's intention in 10 Del. C. § 5904(b). As a result, the Court must remand the case back to the Court of Common Pleas, with instructions to apply only the standard provided for in the statute.

25. Until 2018, Delaware Courts evaluated all petitions to change the name of minor children using ten factors.[14] Those factors were used to determine whether

---

[12] *Hicklin v. Onyx Acceptance Corp.*, 970 A.2d 244, 248 (Del. 2009) (citing *Wright v. Platinum Fin. Servs.*, 930 A.2d 929, 2007 WL 1850904, at *2 (Del. 2007) (Table)).

[13] *Id.*

[14] *See, e.g., Lavoie v. Boone*, 2016 WL 5400298, at *3 (Del. Super. Sept. 15, 2016) (citing *In re Boone*, 2015 WL 9463249, at *2 (Del. Com. Pl. Dec. 21, 2015)). ("In determining whether 'the best interests of the child' would be served by granting the proposed name change, the trial court considered the following factors:
1. A parent's failure to financially support the child;
2. A parent's failure to maintain contact with the child;
3. The length of time that a surname has been used for or by the child;
4. Misconduct by one of the child's parents;
5. Whether the surname is different from the surname of the child's custodial parent;
6. The child's reasonable preference for a surname;
7. The effect of the change of the child's surname on the preservation and development of the child's relationship with each parent;

granting the petition would be in the *best interests of the child*.[15]

26. However, in 2018, our Legislature amended 10 *Del. C. § 5904* to include subsection (b). Section 5904(b) now supercedes the best interest of the child standard in cases where a parent of a minor seeks to add that parent's surname to the minor's surname "either as an additional name or hyphenated with the minor's previously-existing surname."[16]

27. Per our Legislature's intent, there is a statutory presumption in favor of granting such petitions.[17]

28. However, this presumption is not set in stone. Our Legislature also provided parents who oppose such a name change a mechanism for rebutting the statutory presumption. As such, the parent opposing the petition must demonstrate clear and convincing evidence[18] that the totality of the factors enumerated in section

---

8. The degree of community respect associated with the child's present surname and proposed surname;
9. The difficulties, harassment, or embarrassment that the child may experience from bearing the present or proposed name; and
10. The identification of the child as a part of the family unit."

[15] *See, e.g., Lavoie v. Boone, 2016 WL 5400298, at \*3 (Del. Super. Sept. 15, 2016) (citing In re Boone, 2015 WL 9463249, at \*2 (Del. Com. Pl. Dec. 21, 2015)).*

[16] *House Bill 178, 149th General Assembly (Present)*, Delaware General Assembly, http://legis.delaware.gov/BillDetail?legislationId=25787; 81 Del. Laws ch. 141 (2017), http://delcode.delaware.gov/sessionlaws/ga149/chp141.pdf.

[17] 10 *Del. C. § 5904(b)*.

[18] Clear and convincing evidence is evidence that "produces in the mind of the trier of fact an abiding conviction that the truth of [the] factual contentions [is] 'highly probable.'" *Matter of DeGrace*, 2018 WL 3202776, \*2 (citing *Hudak v. Procek*, 806 A.2d 140, 147 (Del. 2002) (quoting

9

5904(b) demonstrates that granting the petition "would cause the minor more harm than benefit[.]"[19]

29. The factors enumerated in § 5904(b) are: (1) the length of time that a surname has been used for or by the minor; (2) the minor's reasonable preference for a surname; (3) the effect of the change of the minor's surname on the preservation and development of the minor's relationship with each parent; and (4) the identification of the minor as a part of the family unit or, if applicable, multiple family units.[20]

30. While those factors enumerated in section 5904(b) are all but identical to four of the old ten "best interests of the child" factors,[21] that does not mean that the best interest of the child standard survived the Legislature's amendment, as demonstrated by the synopsis for the legislation adding subsection (b) to section 5904. As explained by the synopsis, our Legislature's purpose for the amendment was as follows:

> The children of parents who divorce or were never married often share a surname with only one parent, which may lead to confusion or hardship when schools, doctors, or others fail to recognize the child's connection with the parent with whom the child does not share a similar surname. Parents and

---

*Cerberus Int'l, Ltd. v. Apollo Mgmt., L.P.*, 794 A.2d 1141, 1151 (Del. 2002)).

[19] *Matter of Kubec*, 2018 WL 3689555, *2 (Del. Com. Pl. July 27, 2018).

[20] 10 *Del. C. § 5904(b)(1)-(2)*.

[21] *See House Amendment No. 1 to House Bill 178, 149th General Assembly (Present)*, Delaware General Assembly, http://legis.delaware.gov/BillDetail?legislationId=25873 (adding the phrase "or, if applicable, multiple family units" after "The identification of the minor as a part of the family unit").

children in such circumstances have compelling reason to seek to add a second surname to the child's name.[22]

31. In this case, it is clear that the lower court, in addition to applying the enumerated factors from the recently amended section 5904(b), also incorporated the previous, and erroneous best interest of the child analysis.[23] This is further evidenced by the court's questioning the Constitutionality of the Legislature's amendment.[24] As a result, the lower court made a legal error and this Court cannot affirm.

32. Thus, because the Court has found that the lower court committed legal error, the remaining arguments of counsel need not be addressed.[25]

---

[22] *House Bill 178, 149th General Assembly (Present)*, Delaware General Assembly, http://legis.delaware.gov/BillDetail?legislationId=25787.

[23] *See* Order, Petition to Change Name of Channing Lane Wilson to Channing Lane Wilson-Haas, C.A. No. CPU5-18-000188 at 1-2 (the lower court considered and addressed the ten factors separately in its April 11, 2018 ruling and incorporated that analysis into the April 20, 2018 Amended Order that reconsidered the four section 5904(b) factors).

[24] *See Id.* ("The standard set forth in [section] 5904 may be problematic in that it deviates from the long standing principle that all matters affecting children are to be considered under the 'best interest of the child 'standard and the statute appears to [ ]set forth a new standard that does not comport with this over-arching concept that all matters affecting children should be decided under this standard.") However, because the issue relating to section 5904's constitutionality was not litigated in the Court of Common Pleas, this Court will not address it here.

[25] The Court will note, however, that the Appellee, in his brief, contends that the Appellant's brief should be denied because the scope of the appeal did not include alleged errors in the Court of Common Pleas' Amended Order. The Appellee points out that the Appellant's Notice of Appeal, filed in this Court on April 23, 2018, only addressed the Court of Common Pleas' bench order of April 11, 2018, and not the subsequent Amended Order. The Appellant counters that Appellee's claim is barred by res judicata in that (1) the October 12, 2018 bench order at the Motion to Dismiss hearing is dispositive of this particular issue as it relates to the posture of this matter and (2) by the stipulated briefing schedule where the parties acknowledged and agreed that the question of

## CONCLUSION

For the reasons stated above, the decision of the Kent County Court of Common Pleas is **REVERSED AND REMANDED** in order for the court to apply the correct presumption and the correct standard pursuant to 10 *Del. C.* § 5904(b) and for further proceedings consistent with this decision.

**IT IS SO ORDERED.**

/s/ William L. Witham, Jr.
Resident Judge

WLW/dmh

---

procedural efficacy was decided in the Appellant's favor. The Court agrees with the Appellant's view that the appeal should be decided on its merits, and has done so.